THE MAYOR & C. C. OF BALTO. *vs.* THOMAS POULTNEY & DAVID B. TRIMBLE.

RIOTOUS OR TUMULTUOUS ASSEMBLAGES: CODE OF PUB. GEN. LAWS, ART. 82: PRAYERS AND INSTRUCTIONS TO THE JURY.—In an action on the case by P. & T., against the Mayor & C. C. of Balto., claiming damages for injuries sustained by them in the loss of fire-arms, &c., taken and carried away from their store in said city, and from other acts there done by a tumultuous body of people, on the 21st day of April, 1861, the following instructions were given by the Court below and sustained on appeal:

1st. That the remedy of the plaintiffs for the injuries of which they complain, is under the 82d Article of the Code of Public General Laws, and that they have no remedy at common law ; and that to entitle the plaintiff to recover in this action, under the Code, the jury must be satisfied from the evidence, that their store was injured or their goods taken away by a riotous or tumultuous assemblage too strong to be resisted without the aid of the city authorities.

2nd. That to entitle the plaintiffs to recover under the provisions of the 82nd Article of the Code, the jury must find from the evidence that the defendants had good reason to believe, that a riotous or tumultuous assemblage too strong to be resisted without the aid of the city authorities, was about to take place at the store of the plaintiffs in time to prevent it, against the alleged riot of Sunday, and that the defendants had the ability of themselves or by the aid of their own citizens, to have prevented the said assemblage before the injuries complained of were committed, and that the defendants did not use reasonable diligence in the employment of the powers entrusted to them for the purpose of preventing or suppressing the said riotous or tumultuous assemblage, but that the defendants were not bound to place officers or guards around the property of the plaintiffs to prevent injuries or depredations in the absence of any riotous or tumultuous assemblage then menacing it, or unless there was good reason for believing that it would be assailed by a riotous or tumultuous assemblage.

3rd. If the jury find from the evidence, by witnesses introduced by the plaintiffs, that the persons collected about the store of the plaintiffs, on the 21st of April, 1861, or thereabouts, were there for the purpose of procuring arms by force if they were resisted, and were there also for the purpose of mutually assisting each other in the forcible execution of the said object, if the use of force should be found to be necessary, and that the said store was entered and the goods therein taken away by

by certain persons forming a part and connected with the said assemblage force or against the free and unrestrained will of the plaintiffs, then the property of the plaintiffs is to be considered as injured, and their goods taken away by a riotous and tumultuous assemblage within the meaning of the 82nd Article of the Code, in relation to riots.

4th. That if the jury shall find a verdict for the plaintiffs, then, in estimating the damages, they are to give to the plaintiffs the full amount of any damage they may find the plaintiffs have sustained by injury to their store, and also the full amount of the value of the goods which they may believe were taken away by force, or surrendered by the plaintiffs, under the apprehension of force, and not freely and voluntarily delivered.

APPEAL from the Superior Court of Baltimore city.

This was an *action on the case*, brought by the appellees against the appellant, to recover damages for injuries sustained by them in loss of goods, wares and merchandize taken and carried away from their store in the city of Baltimore, and for other injuries done them by a tumultuous assemblage of people on the 21st of April, 1861.

The declaration contained three counts, the first and second counts were framed on the 82nd Article of the Code of Public General Laws, and the third was framed with reference to the principles of the common law.

*First Exception.* At the trial of this cause the plaintiffs, to support the issue on their part joined, gave in evidence by *Joshua Vansant*, a competent witness, the following facts: That he knows the plaintiffs who occupy a store in Baltimore street, No. —, in the city of Baltimore, and which store they occupied in April, 1861, and that they had in said store a large stock of goods, consisting of guns, pistols and other munitions; that on Sunday the 21st day of April, 1861, between the hours of ten and eleven o'clock of that day the witness was passing along Baltimore street, going eastwardly, and when he had reached Charles street, at the intersection of Baltimore and Charles streets, his attention was attracted by a crowd of persons who had collected in Baltimore street,

Mayor & C. C. of Balto. vs. Poultney & Trimble.

in front of the store of the plaintiffs; that he went over and found a crowd there of from fifty to sixty persons, and found it difficult to get through the crowd, who were somewhat excited, and who were pressing to get up to the window of the store of the plaintiffs; that the pane of glass on the left hand side of the door was broken through and some persons were in the store; that he succeeded in getting to the door, and there found a stout person who was haranguing the crowd, and was endeavoring to dissuade them from going in, and from carrying away the goods; that the witness also endeavored to induce the crowd to desist, remonstrating with them and urged the injustice and impropriety of taking the goods of the plaintiffs without their leave; that the witness remained there about fifteen minutes; that Mr. Trimble then appeared (one of the plaintiffs) and the witness then went off; that he had been a good deal pressed by the crowd, and as the proprietor had come, he felt at liberty to go away; that he saw persons with guns, and remembers to have noticed particularly a gun which seemed to be a double barrelled gun highly finished; that some had whiskey flasks and other articles; that there seemed to be some thirty or forty who were endeavoring to press into the store; that a portion of the crowd was composed of young men apparently from fifteen to twenty years of age; that the crowd could have broken in the door if they had chosen to do so; that they exclaimed or cried out—"we must have arms they are going to attack the city." People were going to church at the time.

The plaintiffs also proved by *Christian B. Klerbacher*, a competent witness, that he has been in the plaintiffs' employment for four years; that on Sunday the 21st of April, 1861, about eleven o'clock, he saw a crowd in front of the plaintiffs store, and at the request of Mr. Poultney, one of the plaintiffs, whom he met at the corner of Baltimore and Charles

streets, went to procure the assistance of the police; that Mr. Poultney went towards the store, and at the corner of Fayette and North streets, witness met a body of policemen under the charge of a police officer, and upon communicating to them the object of his mission, they proceeded direct to the store of the plaintiffs, when the crowd immediately dispersed; that he was not gone more than ten minutes, as he supposes; that the police reached the store between half-past eleven and twelve o'clock; that there were persons inside of the store, and two or three persons got over the wall at the back of the store, and came into the back yard, for the purpose, as he supposed, of getting into the store; that Mr. Trimble was in the store when the witness first got in himself, and Mr. Poultney went in the store with the witness; that they both went in after the crowd had been dispersed; that the crowd outside were getting goods out of the store; that so far as the witness saw, they were handed to those outside by those within; that witness first got to the store just in advance of the police and there were no goods handed out after the police arrived; that the police took possession of the store and guarded it effectually for ten days or two weeks from that time.

The plaintiffs offered in evidence by *Barton*, a competent witness, that on Sunday morning the 21st of April, 1861, he and Mr. Trimble, one of the plaintiffs, were sitting together in the parlor of the witness in Baltimore street when the alarm bells commenced ringing; they went to the door and saw a crowd of excited persons in the street, and upon making the inquiry what was the matter? were informed that a body of troops were approaching the city from Pennsylvania, and that they would be resisted by the citizens; that Mr. Trimble then said that the crowd might endeavour to break into their store, as they had a large collection of arms, and requested the witness to accompany him to the store on Baltimore

street which the witness did, and they proceeded at once in that direction; that before they reached the corner of St. Paul's and Baltimore streets, Mr. Trimble stopped and the witness went to the store, where there was a crowd of persons, of from two to three hundred, part boys and part men; that he returned to Mr. Trimble and advised him to go up as he was one of the proprietors, and they both then went to the store where Trimble remained and witness went to procure the police; that this was between ten and eleven o'clock; that he proceeded to the police office and found Marshall Kane on the steps and told him of the crowd at Poultney and Trimble's store, who said he had understood that Poultney and Trimble were giving away their guns to the crowd; that the witness replied that they were giving some guns away to appease the crowd and that he, the witness, had suggested it to Mr. Trimble; that the witness then requested the marshall to send a police force at once to protect the store, who said he would do so, and in a few minutes the police were at the store and protected it effectually from the time of their arrival; that the police were sent promptly after the witness had assured Kane that Poultney and Trimble were not giving away their goods; that there were no guns delivered to the crowd until he suggested it to Mr. Trimble, and he did so advise Mr. Trimble, as the best mode of appeasing the crowd whilst he, the witness, went in quest of the police.

The plaintiffs also read in evidence to the jury the said admitted notice as follows:

To HIS HONOR, MAYOR BROWN, *Baltimore, Md.,*—As a mob is now raging in our city, we fear our store may be broken into by violence, and arms and other goods taken therefrom, and other damage done. We therefore ask protection at your hands.

Yours very respectfully,

POULTNEY & TRIMBLE.

Balto., April 19, 1861.

The above was left with the Police Commissioners, given to Mr. Howard.

The plaintiffs' then called *Wm. Harris*, a competent witness, and offered to prove by him, that on Sunday the 21st day of April, 1861, at about 12 o'clock of that day he was informed by a friend that he heard it declared by a crowd of persons in Baltimore street, that they would have arms and that they had been ordered to defend the city and had no arms; that in consequence of this information, he, the witness, being a gun-maker and having arms in his store, repaired, accompanied by a friend, to his establishment, in order if possible to remove his most valuable arms to a place of security; that whilst engaged in this effort a small crowd gathered before his establishment and upon the expostulation of Mr. Green who had accompanied said witness to his said establishment, the crowd went away taking with them but few articles from the store of said witness; that an opportunity being thus afforded to him, the witness went in search of the police, but could not find any of them; that the witness then sent for the city guard of which he was an honorary member, and a detachment of the city guard shortly afterwards appeared at the store of said witness, but before the said detachment of the city guard appeared the crowd had returned greatly increased in number, and that the said witness being unable to resist them, the said crowd had seized upon and would have carried away a portion of the arms belonging to the said witness to the value of about six hundred dollars; and that the city guard had to charge upon them with fixed bayonets, before the crowd would desist.— But the counsel for the defendant objected to the admissibility of the evidence thus tendered.

The plaintiffs counsel then stated, that they expected and proposed to prove by another witness, that the crowd of persons in Baltimore street had made such declarations and

tised such language as were reported to said witness. The Court thereupon inquired of the plaintiff's counsel, whether they expected and proposed to identify any of the persons who entered the establishment of Mr. Harris, as a part of the crowd, who were at the store of the plaintiffs on said day? And the counsel for the plaintiffs replied, that they were not able to prove such identity. Whereupon the Court, upon the objection of the defendant, rejected the proposed evidence as irrelevant upon the the issue joined, and refused to permit the same to be given in evidence to the jury. To which said refusal the plaintiffs by their counsel, prayed leave to except.

*Second Exception.* The plaintiffs then offered to prove by competent testimony the following facts offered severally:

1st. That the troops of the United States, on their way through Baltimore city to Washington city, were attacked in Pratt street on the on the 19th April, 1861, and that blood was there shed, and that there was great excitement at the railroad depots and throughout the city.

2nd. That a public meeting was held the same evening in Monument Square, under the auspices of the Mayor, and at which meeting the Mayor presided, and that at said meeting there was a manifestation of deep feeling and hot blood.

3rd. That on the evening of the 19th day of April, 1861, Col. Geo. P. Kane, Chief Marshall of Police of Baltimore city, in reply to a despatch received by him from Bradley T. Johnson, of Frederick city, despatched the following telegram to said Johnson: "Thank you for your offer, bring your men in by the first train, and we will arrange with the railroad afterwards, send expresses over the mountains and valleys of Maryland and Virginia, for the Riflemen to come without delay. Fresh hordes will be down on us to-morrow, the 20th, we will fight them or die.—Geo. P. Kane." But the counsel for the defendant objected to the introduction of

such testimony as irrelevant upon the issues joined, and the Court sustained the said objection, and refused to permit said facts or any of them to be given in evidence to the jury; to which said refusal of the Court the plaintiffs by their counsel prayed leave to except.

The plaintiffs then read in evidence to the jury the Ordinance No. —, April, 1861, and the Act of Assembly of April, 1861, ch. 2.

*Third Exception.* The plaintiffs then offered to read in evidence to the jury, copies of several resolutions passed by the City Council of Baltimore, appropriating different sums of money for the payment to divers persons for their claims for damages to property destroyed by the mob on the 21st of April.

To the reading of said resolutions, the defendant, by its counsel, (waiving any objection to the same on the ground of want of the formality of due authentication,) objected as irrelevant to the issues joined in this case. And the Court sustained the said objection, and refused to permit the said resolutions, or any of them, to be offered in evidence to the jury.

To which refusal the plaintiffs, by their counsel, prayed leave to except.

The plaintiffs being unwilling to proceed to trial without the presence of Moritz, a competent witness, but having consented, if the facts which the plaintiffs expected to prove by said witness were admitted, to go to trial, the said admissions were made and read by the plaintiffs in evidence as follows:

The plaintiffs will proceed to trial, if the following facts are admitted.

1. That the notice dated on the 19th April, 1861, was written on that day, after the disturbances had occurred in Pratt street, and was delivered on the same day, or on the morning of the 20th April, to Mayor Brown.

2. That the goods were taken from the store of the plaintiffs on Sunday the 21st of April, 1861, there being a large assemblage of persons then outside and in front of the store; and that a few persons were inside of the store, and handed the goods out.

The witness, *J. D. Moritz*, testified that he was at the store between eleven and twelve o'clock on that day, and that he saw a large crowd before the door, and found that persons were inside, having got in through the front window, by breaking an entrance into the store; that he, himself, then went into the store; that the police arrived there between twelve and one o'clock on that day, and after their arrival protected the property thenceforth; and that the value of goods taken from the store and carried away was $2,583.25.

The defendants then to support the issue on their part joined, offered in evidence to the jury by *George Wm. Brown*, a competent witness, that he was Mayor of the city of Baltimore on the 19th of April, 1861, and for some time before and after that date; that he has no recollection of the particular notice, of which the paper new shewn him purports to be a copy, but has a recollection that some such notice was presented at the Police Board,—there were many notices of the kind communicated to the Board at the time, some written and some verbal, many of which were urgent;— that the Board regarding these notices as being prompted by the vague alarms and apprehensions of individuals, paid no particular respect to them, except in cases where they, the Board, thought there was some reason for their interference and protection; that for some days previous to the 19th of April, there was great excitement in the city, and the police force was continually employed night and day, and were much worn out, so much so, that the Police Commissioners felt it to be their duty to spare the men as much as they

could; that after quieting the disturbance in Pratt street, and upon his return to the office of the Mayor, he found there Governor Hicks, who had already prepared an order calling out the militia; that it was then suggested, probably by himself, that the Police Commissioners had by law the authority to call upon the military for such force, as in their judgment might be required, to preserve order and maintain the authority of the laws, and that it would be best to leave the call to be made by the Commissioners; that Gov. Hicks acquiesced in this view, and a call was made by the Commissioners upon Major-General Stuart for five hundred men; that they were furnished by the General, but they still remained under his command; that General Trimble was appointed on Sunday, and not before; that prior to Sunday the 21st of April, no further call was made for or upon the the military; that the regular police force was four hundred men, and this was sufficient under ordinary circumstances; that no increase of the police force was made by the Board of Police; that no call was made on the sheriff to summon the *posse comitatus*, nor did the board call upon the citizens for aid for any purpose; that the five hundred dollars mentioned in said Ordinance of 19th April, 1861, was promptly provided and placed under his control; that no orders were given to any of the police to make inquiries in the case of the plaintiffs, and no action was taken on their notice.

The defendants further offered in evidence by *John W. Davis*, a competent witness, that he was a member of the Board of Commissioners of Police, existing on the 19th of April, 1861, and before and after; that he has no recollection or knowledge of the notice of Poultney and Trimble of the 19th of April; that the town was greatly excited from Friday until and during Sunday; that after the affair in Pratt street on Friday, there were great apprehensions on on his part of an out-break, but it was a collision between

the two classes of citizens, —the one class sympathizing with the South, and the other in support of the Government, but he heard of no attempt to take the property of individuals until Sunday, except in the single case of Mr. Gunnison, who expressed his apprehensions that an attack would be made on a row of houses belonging to him; that the board thought his apprehensions were well founded, and sent a force of police to protect his property, but they had no application before Sunday for any aid from the police for the protection of property with the one exception of Gunnison; that the board called for five hundred men of the military, and obtained them, and these with his four hundred men of the regular police, were all the force the board thought they required; that they found they had entire control of the town; that on Sunday there was a rumor of the approach of troops from Pennsylvania, and that they had reached Cockeysville; and this rumor created great excitement on Sunday, and a strong determination to meet and repel the Pennsylvania troops; and that the police, in his opinion, had entire control of the city

The defendants further offered in evidence by *Marshal Gifford* of the police, that he was at the police office on Sunday 21st April, 1861; that he was there in the morning, and was there alone, when some person brought intelligence to the office, that a large crowd had assembled at Poultney and Trimble's store, and that they required the aid of the police; that this was about eleven or twelve o'clock; that he started immediately, and intercepted a squad of police who were going to some other point, and took them at once to the store of the plaintiffs; that he found a crowd there, but not boisterous, and saw some person handing out guns through the broken panel in the door, and thinks the person was Mr. Trimble; that he asked whether they were handing out the guns with their own free will and consent,

the person who was handing them out at first said "yes," but when he looked at the witness, and saw he was of the police, he said "no;" that the witness then took the guns from those in the crowd then present, who had received them, and handed them back into the store; that the crowd made no resistance to him, but yielded up the guns quietly; that there were from seventy to one hundred persons at the store, a portion of whom were boys; and that he had with him a force of twenty-five policemen, armed with the usual clubs, and also with revolvers.

The defendant further proved by *Charles McComas*, a competent witness, that he belonged to the police of the city, and passed up Baltimore street, from west to east, between nine and ten o'clock on the morning of the 21st of April, it may have been earlier, and there was a perfect quiet in the street; and that there was no crowd at the store of the plaintiffs at that time.

The plaintiffs then offered one, and the defendants seven prayers, which are stated in substance in the opinion of this Court.

The Court below, (MARTIN, J.,) rejected all of said prayers, and gave the instruction which is set out in full in the head note of this case, in answer to an inquiry from the jury. The verdict of the jury, and the judgment being in favor of the plaintiffs, the defendant appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, COCHRAN and WEISEL, J.

*Wm, Price,* for the appellants:

The appellants contend, that the instructions of the Court were wrong:

Upon a review of the evidence, it appears that no notice was given to the police, or at least no notice of such a character, as was requisite, for the purpose of convincing them

that a force was necessary at the store of the plaintiffs, except the notice on the 19th of April, of which a copy was produced, (ante p. 111,) even this notice was ignored by Mayor Brown, when he states, that he has no recollection of the particular notice of which the paper shown to him purports to be a copy; there were many notices of the kind communicated to the Board of Police, some written, some verbal, many of which were urgent; the board regarding these notices as being prompted by the vague alarms and apprehensions of individuals, paid no particular respect to them, except in cases where they, the board, thought there was some reason for their interference and protection.

It does not distinctly appear then, that any notice was given, and if given, it was on the 19th of April. Now then, were the authorities diligent in acting where they supposed their aid necessary? It must be remembered that they were continually harrassed by applications of all kinds, that false rumors were current upon the streets and elsewhere, that it was almost impossible to discover their truth, or to know at which point their assistance was most needed, they were therefore to keep a constant look-out, to ascertain the correctness of the reports, and to govern themselves and the force under their control, as in their judgment the circumstances required, so that protection to all might be secured, and the city properly kept in order. For this purpose a call was made by the Board of Police upon General Stewart for five hundred men, these with four hundred of the regular police, were all the force the board thought they would require. They found they had entire control of the city. It was impossible for men to do more; they made calls to suit their exigencies, and found them sufficient. This the defendants think conclusive up to this time of the diligence of the police board, and the city authorities generally, in adapting themselves to the circumstances, and in their preparations to defend and protect their citizens from out-break or riot.

Now if this notice was received by the police force at all, was it a notice of an actual riot? or of such a riot as would make it appear that the store of the defendants was in danger of an attack?

The notice itself has every appearance of a production dictated by fear and apprehension, and was such a notice as would embarrass the police force if attended to, and at the expense of taking them away from the scene of immediate trouble, where their services were absolutely necessary. So the commissioners regarded it and the result proved that their views were correct, as no riot nor any manifestation of a riot occurred at the store of the plaintiffs' on that day.

This, then, is the notice relied upon by the plaintiffs, and the only written one produced by them. The day of the 19th closed, and with it the vestiges of riot; it is true the excitement was still high, but that identical day, and that identical riot, were numbered with the past, and Poultney and Trimble's store was untouched; no manifestation upon them had occurred, and as far as they were concerned, every thing was quiet. With the coming in of a new day, they were to be upon their guard, and if it brought new dangers, it was their duty to notify the authorities, if they were threatened, in time to prevent such injury or destruction; and the city to be responsible only, when, after notice duly given, it shall appear that they did not use all reasonable diligence and the powers intrusted to them, for the prevention or suppression of such riotous or unlawful assemblage. (Code, Art. 82.)

The notice must have its date, and base its origin from the time on Sunday morning that the manifestations at the store of the plaintiffs commenced; everything in fact that happened anterior to that time is past, and has no more to do with the subject in question, than if it had occurred in the year before.

The defendants hold that not only the notice in time must be proven, but the lack of diligence on the part of the commissioners, that the assemblage was of such a character that without the aid of the police they would have broken into their store, to damage and destroy and carry away; that they were boisterous, in large numbers; that the plaintiffs gave them no goods of their own free will; and that the police, after their arrival, were unable to protect them.

All of these facts must be shown in order to entitle the plaintiffs to recover; a failure to prove them defeats their action, and upon the testimony as to these circumstances, the defendants have founded the substance of their prayers, and they respectfully insist that they were entitled to corresponding instructions.

Art. 82 of the Code of Public General Laws, sec. 2, declares: that "no such liability shall be incurred by any county, incorporated town or city, unless the authorities thereof shall have had good reason to believe that such riot or tumultuous assemblage was about to take place, or having taken place, shall have had notice of the same in time to prevent said injury or destruction either by its own police or with the aid of the citizens of such county, town or city, it being the intention of this Article that no such liability shall devolve on such county, town or city, unless the authorities having notice have also the ability of themselves, or with their own citizens, to prevent said injury."

And again, by sec. 3: "In no case shall indemnity be received when it shall be satisfactorily proved that the civil authorities and citizens of said county, town or city, when called on by the civil authorities thereof, have used all reasonable diligence, and all the powers intrusted to them, for the prevention or suppression of such riotous or unlawful assemblages."

The appellants' counsel then read and commented fully

16      v. 25.

upon the testimony in the cause, and argued therefrom that the city authorities were able by themselves, and with the force they could command to quell the disturbance, and used all due diligence at the plaintiffs' store, and after their arrival there did effectually protect the establishment from all further demonstrations; that the testimony shows that Trimble, himself, distributed guns to the crowd; that none were distributed after the arrival of the police, but that many were then returned.

The evidence that due diligence was used on the part of the police is very conclusive. Marshal Gifford was alone at the police office when the intelligence of the crowd at the plaintiffs' store arrived; he started immediately and intercepted a squad of police and took them at once to the store in question. Marshal Kane stood upon the steps of the police office, when the witness Barton approached with his complaint of the same tenor. He asked Barton if the plaintiffs were giving away their arms? and upon Barton's explanation of this, he said he would send the police, and in a few minutes they were at the store. The witness, Klorbacher, started after the police, and in ten minutes found them, communicated his message, and returned with them.

Was not this reasonable diligence? Was there ever a police force more diligent? The evidence cited is taken from two of the witnesses of the plaintiffs, and one of the defendants, and they all agree in the fact that there was no delay. The police were on the watch and moving to and fro in all parts of the city; in any and every direction they were to be met, looking out for, and protecting the citizens, quelling disorders and preventing disturbances; in each of the cases above cited, the police were brought to the scene immediately; it was effected by three different persons with three different officers all tending to the same result. Nor have the plaintiffs attempted to show in any way, or by any

witness, that reasonable diligence, after due notice given, was not exercised by the police of the city, but on the contrary the tendency of the evidence which they produced was to the same effect, that every diligence was used, and all possible dispatch.

There is but one other point upon which the defendants rely in sustaining their prayers, and that is: Did the police force after their arrival succeed in protecting the store? The evidence upon this point is as plain and straightforward as upon any of the others. Marshal Gifford says, that "he took the guns from those in the crowd then present, who had received them, and handed them back into the store; the crowd made no resistance but yielded them back quietly." The witness, Barton, says: "in a few minutes the police were at the store and protected it effectually from the time of their arrival." The witness, Klerbacher, says: "that there were no goods handed out after the police arrived; the police took possession of the store and guarded it for ten days or two weeks from that time;" as in the others, this point is proven by three respectable witnesses, and the plaintiffs have not even sought to prove to the contrary.

The defendants, therefore, respectfully insist that they have proven their case clearly, so far as to entitle them to the instructions asked for; that the notice to the Mayor, dated April 19th, did not dispense with the necessity of a notice on the 21st; that the remedy of the plaintiffs is under Art. 82 of the Code of Public General Laws; that according to Art. 82, they have complied with its requirements in using all diligence after notice given to them of the existence of the crowd at the store of the plaintiffs, and that after their arrival they protected it effectually.

They, therefore, respectfully ask that the decision of the Court below be reversed.

*Wm. Schley* for the appellees:

Upon examination of the instructions of the Court, it will be seen that every point embodied in the several prayers set out in the appellant's argument, is fully covered by the instructions of the Court.

The facts were properly left to the jury. In the appellants' argument, questions of *fact* are discussed, as if this Court was to decide on the testimony. To whom did it properly appertain to decide whether the authorities of the city had " good reason to believe " that a riot was about to take place ? To whom did it belong to decide whether the civil authorities, when called on, had or had not used all reasonable diligence and all the powers intrusted to them for the prevention of said riot ? There was evidence that there was great excitement in the city—that blood had been shed in Pratt street—that the plaintiffs had in their store arms and ammunition ; and it was further proved, that no attention was paid to the call of the plaintiffs for protection, nor any inquiries or directions made or given as to the grounds of their apprehension. There was also evidence that Marshal Kane, when called on by Mr. Barton, had knowledge that arms were being obtained from the store of the plaintiffs ; and, upon his unwarranted conclusion that they were giving their arms away, he had not ordered any of the police to visit the plaintiffs' store. Why was this ? It cannot be denied that he might, so soon as he knew that arms were being obtained, have sent a party of men—policemen, citizens or soldiers—to protect the property. The jury, upon the whole evidence, might well have formed the conclusion that in the state of feeling then in the city, it was a reasonable apprehension on the part of the plaintiffs, that their store, being a depot of arms, would be attacked for the sake of the arms there ; and that, in the exercise of reasonable diligence and precaution, a sufficient force of men should have

been sent early on Sunday morning, if not before, (for the excitement was on the increase) to guard the property.

Whether the conduct of the plaintiffs was judicious or not in endeavoring to appease the crowd was for the consideration of the jury, upon the whole evidence, in allowing damages. It did not go to the plaintiffs' right of action.

Whether the assemblage was riotous or not, was not to be decided by the Court. It was for the jury.

Every point presented in the appellants' argument, seems to look to the effect of the testimony as to its probative force, and not to present any sound objection to the ruling of the Court.

Parties may have their remedy at common law, although there may be a remedy by statute. *Scholl vs. Nor. Cent. Railway Co.*, 16 *Md. Rep.*, 331.

WEISEL, J., delivered the opinion of this Court:

In this case the Mayor and City Council of Baltimore were sued by the appellees, (plaintiffs below,) under the 82d Article of the Code of Public General Laws, and also at common law, for injuries done to the store of the plaintiffs in said city, and for losses sustained in the violent taking and carrying away therefrom of a quantity of arms, ammunition and other goods, by a riotous and tumultuous assemblage of people, on Sunday the 21st of April, 1861, a period of well known excitement and alarm in that city.

Evidence was given on both sides, and some offered by the plaintiffs was excluded by the Court, and formed separate exceptions; but in the view taken by this Court of the instruction given to the jury, it is unnecessary to pass upon them.

In considering the instruction which the Court gave, and comparing it with the requirements of the 82d Article of the Code of Public General Laws, we can discover no error in

it, but find that the law, upon a proper construction of said Article, was fully and carefully stated to the jury, and that the defendants below were allowed every benefit and advantage which they could ask under its terms or provisions. That being performed, the finding of the facts, and the application of the instruction to them, was for the jury as in all other cases.

As the instruction of his Honor below is full and meets with the entire approbation of this Court, we deem it unnecessary to enlarge.

*Judgment affirmed.*

(Decided June 20th, 1866.)