### ALBERT YALENEZIAN *vs.* CITY OF BOSTON.
### HARRY GOODMAN *vs.* SAME.

Suffolk. January 10, 21, 1921. — May 28, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Riot. Municipal Corporations,* Statutory liability for damage by riot. *Statute,* Construction. *Words,* " Destroyed," " Injured."

R. L. c. 211, § 8 (see now G. L. c. 269, § 8), requiring a city or town to make good to the owner of property destroyed or injured " by twelve or more persons who are riotously or tumultuously assembled" three fourths of the value thereof under certain conditions, is not in derogation of any common law right of the municipality, is remedial so far as it provides compensation to the person whose property has been destroyed or injured and penal so far as it throws the burden of compensation on the municipality, and is to be construed liberally and in such a way as shall tend to suppress the mischief.

In the statute above described, the phrase of the statute, " riotously or tumultuously assembled," must be read conjunctively to describe the offence of an unlawful assembly which has proceeded to execute an unlawful purpose in a way that has resulted in the destruction of property or in injury thereto, and in a manner to give firm and courageous persons in the neighborhood of such assembly reasonable grounds to apprehend a breach of the peace in consequence of it.

It is not a prerequisite to liability under the statute above described that the " persons. . . . riotously or tumultuously assembled" should have come together with a common intent or in an unlawful manner.

At the trial of an action under R. L. c. 211, § 8 (see now G. L. c. 269, § 8), there was evidence tending to show that more than twelve persons were tumultuously assembled, that from the crowd twelve or more persons broke into and entered the plaintiff's store in the night time, that fifteen or twenty persons with a common purpose of larceny entered the store and carried away from it personal property and by concert of action gave aid, assistance and countenance to each other. *Held,* that every element of the crime of riot reasonably could be found to be present.

Property stolen is not " property . . . destroyed or . . . injured " within the provisions of R. L. c. 211, § 8 (see now G. L. c. 269, § 8).

No liability is imposed upon a city or town under R. L. c. 211, § 8, for property stolen " by twelve or more persons who are riotously or tumultuously assembled."

Two ACTIONS OF TORT under R. L. c. 211, § 8, for three fourths of the value of property alleged to have been taken away from the plaintiffs' stores in Boston just before midnight on September 9, 1919, and on the morning of September 10, just after midnight. Writs in the Municipal Court of the City of Boston dated, respectively, November 18, 1919, and February 3, 1920.

The material evidence and requests of the defendant at the trials of the respective actions in the Municipal Court are described in the opinion. In the first action there was a finding for the plaintiff in the sum of $271.68, and in the second action a finding for the plaintiff in the sum of $1,500. Each action was reported to the Appellate Division, who ordered the report dismissed. The defendant appealed.

*A. D. Hill,* (*S. Silverman* with him,) for the defendant.

*M. Klein,* (*W. H. Watson* with him,) for the plaintiffs.

PIERCE, J. These are actions of tort, brought under R. L. c. 211, § 8, to recover of the defendant three fourths of the value of certain personal property of the plaintiff, alleged to have been destroyed or injured by twelve or more persons " riotously or tumultuously assembled " on the evening of September 9, 1919, and the morning of September 10, 1919.

Section 8 reads: " If property of the value of fifty dollars or more is destroyed or if property is injured to that amount by twelve or more persons who are riotously or tumultuously assembled, the city or town within which the property was situated shall, if the owner of such property uses all reasonable diligence to prevent its

destruction or injury, and to procure the conviction of the offenders, be liable to indemnify the owner thereof in an action of tort to the amount of three-fourths of the value of the property destroyed or of the amount of such injury thereto, and may recover the same against any or all of the persons who destroyed or injured such property."

In each case the defendant rested upon the plaintiff's evidence, and before the final arguments made the following requests for rulings:

" 1. On all the evidence the plaintiff is not entitled to recover.

" 2. If the evidence shows that the property of the plaintiff was stolen from his premises, the defendant is not liable under R. L. c. 211, § 8, and the plaintiff is not entitled to recover.

" 3. If the evidence shows that the property of the plaintiff was carried away by the rioters and the evidence does not show that said property was either injured or destroyed, the plaintiff is not entitled to recover."

In the case of Goodman there were additional requests, material among which were the following:

" 8. In order to constitute a riotous and tumultuous assembly under R. L. c. 211, § 8, it is necessary that those assembled have intended to help one another by force if necessary against any person who may oppose them in the execution of their common purpose.

" 9. In order to constitute a riotous and tumultuous assembly under R. L. c. 211, § 8, it is necessary that those assembled use force or violence not only in demolishing and destroying the plaintiff's property but that such force and violence be displayed in a manner so as to alarm at least one person of reasonable firmness and courage.

"10. In order to constitute a riotous and tumultuous assembly under R. L. c. 211, § 8, it is necessary that all of the following five elements be present and in the absence of any one of them a riotous and tumultuous assembly does not exist.

" (a) There must have been twelve or more persons assembled.

" (b) Those assembled must have had a common purpose.

" (c) Those assembled must have executed or begun to execute their common purpose.

" (d) Those assembled must have intended to help one another

by force if necessary against any person who should oppose them in the execution of their common purpose.

"(*e*) Those assembled must have not only used force or violence in demolishing and destroying the plaintiff's property but must have displayed such force or violence in such a manner as to have alarmed at least one person of reasonable firmness and courage."

The judge refused to give requests numbered " 1," " 2," " 3," and those lettered " d " and " e "; and gave in substance the remaining requests as formulated under the alphabetical letters " a," " b," " c."

No decisions upon the statute have been rendered in this Commonwealth. It is plain no common law right of the plaintiffs has been violated. *Hathaway* v. *Everett*, 205 Mass. 246. It is not contended but that the evidence tended to show that the plaintiffs used all reasonable diligence to prevent the destruction or injury to their property, and to procure the conviction of the offenders.

The statute is not in derogation of any common law right of the defendant; it is the principle of making all members of a territorial or municipal division sureties for each other in criminal matters, which has found voice in England in the statutes of hue and cry, of robbery, and the protection of property from violence. 1 Bl. Com. 114, 115, 116. *Pinkney* v. *de Rotel*, 2 Saund. 374. Crabb Hist. of Eng. Law, 43, 324. St. of Winchester, 1, 13 Edw. I, c. 3, re-enacted 28 Edw. III, c. 11. St. 27 Eliz. c. 13, § 2. St. 1 Geo. I, c. 5, §§ 1-7. The object of these statutes, and the policy of the particular statute and similar statutes, is " to make good, at the public expense, the losses of those who may be so unfortunate, as without their own fault to be injured in their property by acts of lawless violence of a particular kind which it is the general duty of the government to prevent.". Such an act is both remedial and penal. " It is remedial so far as it provides compensation to the person whose property has been destroyed, and penal, so far as it throws the burden of that compensation on the municipality within whose borders the destruction took place." In this aspect the statute is to be construed liberally and in such a way as shall tend to suppress the mischief. *Underhill* v. *Manchester*, 45 N. H. 214, 221 (1864). *Darlington* v. *Mayor of New York*, 31 N. Y. 164

(1865). *Chicago* v. *Sturges,* 222 U. S. 313, 323 (1911). *County of Allegheny* v. *Gibson's Son & Co.* 90 Penn. St. 397.

In the Goodman case a concise statement of facts, as shown by the uncontradicted testimony of the witnesses, is as follows: September 9, 1919, at 11:30 P.M. there was " a large crowd of people . . . in the street in the vicinity of the plaintiff's store," shouting, shooting dice for money, singing, dancing and fighting to a degree that a witness testified that " things were terrible there, and we were afraid to go through the street." At the same place and on the same night at 11:45 P.M. the windows and doors of the store were crashed and broken, and fifteen or twenty men entered the store and came out with clothing on their arms. They ran down the street from the store with the clothing, " everyone had something," all had clothing, and two with a small trunk.

In the Yalenezian case the facts as shown by, and reasonably to be inferred from, the uncontradicted testimony are, that at 1 A.M. on September 10, 1919, crowds passed the store of the plaintiff, yelling and singing; that during that morning the glass of the door was smashed and the door itself broken open; that six or more people entered the store and carried away cloth and clothing in value in excess of $50. A witness testified that " he heard footsteps and noises in the store above him. He did not dare leave his store, for he was afraid. He could not tell how many there were upstairs, but from the noise it appeared to him there must have been six or more people. The exact number he could not tell. He did not see anybody break into the store nor take anything from it. He saw crowds passing the front of the building with shirts, shoes and suits of clothes like that which he had seen in the plaintiff's shop, but he could not really identify the clothes nor tell where the clothes came from and to whom they belonged. He also saw at the time he heard the noise overhead him in the store, directly in front of the store a crowd consisting of more than twelve persons." There was no other material evidence.

We are of opinion that the phrase of the statute " riotously or tumultuously assembled," must be read conjunctively to describe the offence of an unlawful assembly which has proceeded to execute an unlawful purpose in a way that has resulted in the destruction of property or of injury thereto, and in a manner to give firm and

courageous persons in the neighborhood of such assembly reasonable grounds to apprehend a breach of the peace in consequence of it. *Regina* v. *Vincent,* 9 C. & P. 91. See *Commonwealth* v. *Runnels,* 10 Mass. 518. It is not requisite to an unlawful assembly or riot that persons should have come together with a common intent, or in an unlawful manner. Persons having lawfully come together and being lawfully together, may, thereupon, become an unlawful assembly and commit a riot, although they had not that purpose when they assembled. *The Queen* v. *Solely,* 11 Mod. 100. Stephen's Digest of Crim. Law, 56. Russ. Crimes, (7th Eng. ed.) 412. And the lawful assembly may become unlawful, although none of them had the intent " to help one another by force if necessary against any person who should oppose them in the execution of their common purpose," it being sufficient under the statute that twelve or more assembled persons have a common purpose which a part of them proceed to execute with the aid, abetment, encouragement or countenance of the others. *Commonwealth* v. *Frishman,* 235 Mass. 449, 455. It follows that the requests numbered 8 and 10 (*d*) were rightly refused; as were the requests numbered 9 and 10 (*e*) in the form presented.

We think every element of the crime of riot could reasonably be found present. There was evidence that more than twelve persons were tumultuously assembled; there was evidence that from the crowd twelve or more persons broke into and entered the stores of the plaintiffs in the night time; there was evidence that fifteen or twenty persons with a common purpose of larceny entered the stores and carried away from the stores personal property, and by concert of action gave aid, assistance and countenance to each other.

A further question is raised by the request in each action to rule that " If the evidence shows that the property of the plaintiff was stolen from the premises, the defendant is not liable under R. L. c. 211, § 8." With limitations the statute gives to owners compensation for property destroyed or injured by persons while assembled in a riot. By force of its express provision the statute has relation only to property situated in the city or town where it is destroyed or injured. Destruction of property or injury to property with a local situs, naturally imports the physical existence of a tangible thing which may be the subject of property. A

theft of property does not signify that the thing stolen has been destroyed or injured; it imports only an injury to the possessory right of the general or special owner to use and enjoy the thing which is capable of being stolen, by taking and carrying it away. By theft the owner does not lose the title or right to possession of the stolen property.   He may retake it whenever and wherever he can find it; and he can have for his assistance any force of the criminal and civil law.   The statute awards compensation within its terms, to owners of property destroyed or injured as a matter of favor, of public policy and not of right.   It follows that there can be no incongruity in denying compensation for injury to property and property rights which are without the purview of the statute.   *Wells Fargo & Co.* v. *Jersey City,* 219 Fed. Rep. 699. On the other hand the cases of *Sarles* v. *Mayor of New York,* 47 Barb. 447, *Solomon* v. *Kingston,* 24 Hun, 562, affirmed on appeal in 96 N. Y. 651, *Baltimore* v. *Poultney & Trimble,* 25 Md. 107, *Spring Valley Coal Co.* v. *Spring Valley,* 65 Ill. App. 571, support the contention of the plaintiff, that to steal property is to destroy property, within the meaning of statutes having provisions similar to the statute under which this action is brought.

In each case, in the opinion of a majority of the court the order of the Appellate Division of the Municipal Court, " Report dismissed," should be reversed, and an entry of judgment for the defendant be entered.

*So ordered.*