MORRIS GOLDMAN *vs.* WILFRED J. FORCIER, *Treasurer.*

BENJAMIN STEIN *vs.* SAME.

JULY 27, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. These two actions of trespass on the case were brought under general laws 1923, chapter 396, sec. 10, now general laws 1938, chapter 607, § 14, to recover the value of certain property alleged to have been destroyed or injured during a riot, in the city of Woonsocket, on September 13, 1934. The cases were tried together before a justice of the superior court sitting without a jury. He rendered a decision for the plaintiff in each case in the following amounts: $4718.71 for Goldman and $578.87 for Stein, interest included. The defendant duly excepted to each of these decisions.

Since the statute upon which the causes of action in these cases are based is the same in both G. L. 1923 and G. L. 1938, we shall refer to the statute as it appears in the latter compilation of our general laws. General laws 1938, chap. 607, § 14, hereinafter referred to as § 14, reads: "Whenever any property of the value of $50.00 or more shall be destroyed

or be injured to that amount by any persons to the number of 6 or more unlawfully, routously, riotously or tumultuously assembled, the town or city within which said property was situated shall be liable to indemnify the owner thereof to the amount of three-fourths of the value of the property so destroyed or three-fourths of the amount of such injury thereto, to be recovered in an action of the case in any court proper to try the same, provided the owner of such property shall use all reasonable diligence to prevent its destruction or injury by such unlawful assembly and to procure the conviction of the offenders."

The defendant admits that, on September 13, 1934, there was a riot in the city of Woonsocket within the meaning of the statute, and that the plaintiffs have complied with all provisions thereof so as to enable them to bring these actions. The defendant further admits that it is liable, to the extent provided by statute, for the value of plaintiffs' property that was destroyed or injured in the riot, but it strongly contends that it is not liable for the value of property that was stolen from the respective plaintiffs during the rioting.

The evidence shows that the store of Goldman, who dealt in malt, hops and package liquor goods, and the shoe store of the plaintiff Stein were the subject of mob violence. Goldman's proof of damages rests solely on two inventories, one which he claims to have taken on August 31, 1934, and the other on September 14, 1934, the day following the riot. He testified that he was unable to produce any books of account, invoices, sales slips, or other records, including those which he was required by law to keep in connection with his liquor business, as he had lost them in some unknown manner during the time that his case was pending for trial. He further testified that he could not tell what merchandise had been stolen from his store or what had been there destroyed or injured. "You actually saw that some had been taken from the store. A. I wouldn't say some; I would say quite a bit."

The accountant who took both inventories, with the assistance of Goldman and another, testified that he did not

know where the "goods went" which were represented by the difference between the two inventories. "I don't know what amount was stolen or lost. I know it was gone that day," meaning September 14, 1934. "Q. In other words, just how much merchandise was stolen, you don't know? A. No, I don't. Q. Your figures would include both damaged merchandise, broken merchandise, or stolen merchandise? A. All merchandise that wasn't there."

The plaintiff Stein testified that his loss consisted in the disappearance from his store of 199 pairs of shoes. "Q. Those one hundred ninety-nine pairs were stolen? A. Yes; they were stolen. . . . Q. So the rioters had stolen one hundred ninety-nine pairs? A. Yes." This plaintiff also produced no books or other records to support his claim, testifying that he kept no books and that he destroyed all other records when he discontinued business in 1935.

The parties look at § 14 from entirely different viewpoints. The plaintiffs argue that it is a remedial statute and therefore should be liberally construed. The defendant, on the other hand, argues that it should be strictly construed as it is a penal statute in derogation of the common law. In our judgment resort to either of these views as to the general character of the statute is confusing. Whether the statute is remedial or penal, or both, it should be construed fairly, according to its terms, to accomplish the purpose for which it was intended.

It is the general duty of the state to secure to its citizens the peaceful enjoyment of property and to protect it against destruction or injury by riots. The duties of local governmental administration are delegated, in large measure, to the municipalities, which stand in the place of the state in enforcing the law and in protecting property within their respective limits. In the absence of express statutory provision, it is well settled that a municipality, which is created by the state and acts as its agent in the discharge of governmental functions, is not liable for the destruction of or injury to property resulting from riots.

The state, however, in the exercise of its police power for the public safety and general welfare, may impose upon its municipalities liability for property within their respective limits that is destroyed or injured by riots. A statute that subjects municipalities to such liability is, in effect, a police regulation for the better government of the state through its cities and towns. Its primary object is to make the citizens of the municipalities law-conscious through apprehension of the penalty that they collectively would have to pay by way of compensation, through the municipality, to an individual whose property was destroyed or injured during a riot.

We deem § 14 legislation of that character, attention being called to the fact that before a plaintiff can recover under the section he "shall use all reasonable diligence . . . *to procure the conviction of the offenders.*" (italics ours)

It is true that through this kind of legislation a benefit accrues to the individual whose property is so destroyed or injured, but the real purpose of the statute nevertheless is to encourage the proper observance of law and order by the community in general. As far as the individual is concerned, the right that he acquires under such a statute is a permissive right, or privilege, which cannot extend beyond the fair meaning of the language of the statute. In *Goldman* v. *Quinn,* 60 R. I. 335, where the constitutionality of the statute now under consideration was questioned, this court, speaking of the right accruing to an individual whose property was destroyed or injured during a riot, at page 338 of that opinion, says: "By the exercise of its sovereign power, the state has seen fit to confer a privilege on such a person and to permit its municipalities to be sued and to require them to respond in damages for injuries caused to property beyond a certain value. What it thus freely gives, it may as freely take away, or it may enlarge the privilege or restrict it further."

Section 14 should be construed in the light of the rule that the language of a statute is to be given its ordinary and usual meaning, unless it reasonably appears that the language has

been used by the legislature in a special sense. In our opinion, this section is drawn in the simple language of common speech. Upon compliance with certain conditions, the statute makes the municipality liable for the value of three-fourths of "property" that is "destroyed" or "injured" by riot, provided a plaintiff "shall use all reasonable diligence to prevent its destruction or injury by such unlawful assembly." Section 14 does not say that the owner of property which is destroyed or injured during a riot shall recover the damage or damages that he may have sustained by such destruction or injury. The word damage or damages is not used at all.

In our judgment, this careful use of plain language manifests a legislative intention to restrict the liability of a municipality, in the amount specified, to property that is actually destroyed or injured by riot, without reference in any way to the damage or damages that the owner of such property might have otherwise sustained by reason of the riot. We find nothing in the language of § 14 that would permit us to allow recovery against a municipality for consequential loss by theft during a riot, even though such loss may be an incident of and proximately related to the violence of rioters.

In using the words destroy and injure in direct connection with the word property, and by addressing itself solely to the destruction and injury of property in dealing with the amount of recovery allowed under the statute, the legislature used language that is clear and unmistakable. The words destroy, injure, destruction and injury do not mean, nor necessarily imply, either in law or in ordinary speech, the felonious taking and carrying away of the property of another. Nor is there any indication in the language of § 14 that the legislature intended to use those words in any special sense.

We cannot assume that the legislature did not have in mind that rioters are driven by the force of blind passion, and that a riotous and tumultuous assembly furnishes occasion for stealing by individuals, whether they be participants in such assembly or not. These thoughts naturally spring

to the mind of any person of ordinary prudence when dealing with the matter of a riot or tumultuous assembly. We cannot tell whether the legislature, in enacting § 14 in its present form, intentionally or through accident omitted to use any language that would allow recovery for property stolen during a riot.

The fact remains that if the legislature had intended to allow compensation for property stolen during a riot, nothing would have been simpler than for it to say so. By limiting recovery to a certain percentage of the "property" that is "destroyed" or "injured" in a riot, the legislature precluded the inference that it intended the statute to also cover property that was neither destroyed nor injured, but was taken and carried away with intent to steal it. If the omission of terms or language sufficient to indicate that it was the intention of the legislature to allow recovery for property stolen during a riot was due to accident, then it belongs to the legislature to supply such terms or language. It is not within our province to insert in a statute omitted words or language, unless the legislative intent thus to have it read is plainly evident in the statute. We find no such intent in § 14. "It is our duty to construe the statute, not to redraft it." *Moretti v. Division of Intoxicating Beverages,* 62 R. I. 281, 286.

We have carefully examined the following cases, cited to us by the plaintiffs, where recovery was allowed for property stolen during a riot under statutes that included the words destroyed or injured. We append to the citation of those cases a reference in parenthesis to the respective statutes involved. *Sarles* v. *Mayor, New York,* 47 Barb (N. Y.) 447 (Sess. L. 1855, ch. 428); *Solomon* v. *City of Kingston,* 24 Hun. 562, affirmed without opinion in 96 N. Y. 651 (Laws 1855, ch. 428); *Mayor, Baltimore* v. *Poultney & Trimble,* 25 Md. 107 (82d art. of the code of public general laws); *Spring Valley Coal Co.* v. *City of Spring Valley,* 65 Ill. App. 571 (Laws of 1887, 239); *Febock* v. *Jefferson County,* 262 N. W. (Wis.) 588 (St. 1933, § 66.07); *Tyler & Sons* v. *County Coun-*

*cil of Cork,* 2 Irish Rep. (1921) 8. (Sect. 1 of the Malicious Injuries (Ireland) Act, 1853, 16 & 17 Vict., c. 38.)

The aforementioned cases lend us no assistance, as they are based upon statutes that are either different from, or at least much broader than, our § 14. Those statutes that most closely resemble our statute provide recovery for the "damage" or the "full amount of the damages" sustained, which language, when read with its context, might reasonably warrant the construction that the legislature intended to include property stolen during a riot. As we have already pointed out, there is no such language in our statute.

In support of their contention, the plaintiffs quote the following from the opinion of the Lord Chancellor in *Tyler & Sons* v. *County of Cork, supra.* This language is used by him in connection with his discussion of certain early English cases which denied recovery for property stolen during a riot. At page 17 of the opinion, he says: "This limited construction of the Act of George I was considered to be so plainly contrary to the intention of Parliament in passing it that, as we are told in Bacon's Abridgment, vol. iv, p. 262, the Act of 57 George 3, c. 19, was passed, which, by sect. 38, expressly included in the subject-matter of compensation all property in the house, if destroyed, *taken away,* or damaged." (italics ours) We regard this statement of the learned chancellor as mere historical comment incident to his apparent purpose of meeting the opinion of a dissenting judge who relied on those cases, for, immediately following what we have just quoted, the chancellor says: "Further, I am satisfied that these cases have long since ceased to be any authority for the proposition which they purport to decide, and may be entirely disregarded in connexion with our Criminal Injuries Code."

The *Tyler* case is inapplicable to the instant cases because of the great dissimilarity between the English statute and our § 14; but even if that case were applicable, it clearly shows that the English courts, when construing the language of parliament in the Act of George I, denied recovery for

property stolen during a riot. On close analysis, the case, if at all pertinent here, seems to be an authority against rather than in favor of the present plaintiffs.

In *Yalenezian* v. *City of Boston,* 238 Mass. 538, upon which the defendant strongly relies, the court had occasion to construe a statute that, in all material respects, is identical with our § 14. In a majority opinion, without written dissent, the Massachusetts court held that, "under R. L. c. 211, § 8" the plaintiff was not entitled to compensation for goods stolen from his premises during a riot. An independent and careful examination of our § 14 leads us to the same conclusion, for the reasons hereinbefore stated.

The defendant's exception to the decision of the trial justice in each of the instant cases is sustained.

In the Goldman case, it is impossible for us to determine what amount the plaintiff claims for property that was destroyed or injured in the riot, and what amount he claims for property that was stolen during the riot. Therefore, that case is remitted to the superior court for a new trial in accordance with this opinion.

In the Stein case, since the entire claim is for property that was stolen during the riot, the plaintiff may, if he shall see fit, appear before this court on October 5, 1942, and show cause, if any he has, why the decision of the trial justice should not be reversed and judgment ordered entered for the defendant.

*Edward F. Dwyer, John J. Mee,* for plaintiffs.

*Morris E. Yaraus,* City Solicitor, of Woonsocket, for defendant.