WILLIAM J. SMITH *vs.* ADELARD L. SOUCY *et al.*

WILLIAM A. BACHELOR *vs.* ADELARD L. SOUCY *et al.*

FEBRUARY 10, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows.

STEARNS, J.   These are two petitions for writs of
*certiorari*, brought by two police commissioners of the city
of Woonsocket.   The respondents are the mayor, the alder-
men and the secretary of the board of aldermen, all of
Woonsocket.

Petitioners ask that respondents be directed to certify
to this court the records relating to the removal of petitioners
from office, and that so much thereof as may be illegal may
be quashed.

The facts alleged in each petition are substantially the
same.   The causes were heard together, on the motions of
respondents to dismiss the petitions on the ground that on
the allegations made the petitioners are not entitled to the
relief prayed for.

William J. Smith was appointed a police commissioner by
the mayor with the approval of the board of aldermen for
a term of three years from February 1, 1923.   William A.
Batchelor was elected police commissioner by the board of
aldermen for a term of three years from February 1, 1924.

At a meeting of the board of aldermen on January 7,
1925, Adelard L. Soucy, mayor and presiding officer of the
board of aldermen, presented and read to the board a written
communication, wherein he stated that he had removed the
petitioners as police commissioners; that conditions of law-
lessness and flagrant disregard for the morals of the city had
come into existence, without any apparent intervention or
interference of certain members forming a majority of the

commission "as evidenced by certain affidavits now in my possession"; that in fulfillment of his duty as mayor, for the betterment of the city and the restoration of better conditions, he felt it to be his duty to remove petitioners for allowing and sanctioning the operation of slot machines and other gambling devices, and the sale of intoxicating liquors; and "for general misfeasance, non feasance and malfeasance in office and for other causes which I deem sufficient to warrant the present action."

A copy of the vote of the board of aldermen is annexed to the petition, whereby it appears that the action of the mayor in removing petitioners was sustained and approved by the board; also a copy of the order of removal which was served on petitioners.

The authority of the mayor and the board of aldermen and the legality of the action taken, are dependent on the provisions of the statutes, more particularly on P. L. 1911, C. 661, as amended by C. 902. By this act, approved March 28, 1911, a board of police commissioners, consisting of three qualified electors of Woonsocket, was created for that city. The governor, with the advice and consent of the senate, was authorized to appoint one commissioner to hold office until February 1, 1913, one until February 1, 1914, and a third until February 1, 1915. After his inauguration, on the first Monday of January, 1913, at the meeting of the board of aldermen on that date, and annually thereafter, the act provides that the mayor shall appoint, subject to the approval of the board of aldermen, one police commissioner for a term of three years from the first day of February next following to succeed the member of the board whose term shall next expire; that if the board of aldermen shall not approve of an appointment made by the mayor, the board shall elect a commissioner. Prior to February 1, 1913, the act provides that the members of the board of police commissioners "may be removed by the governor with the advice and consent of the senate, for such cause as he shall deem sufficient and shall express in the order of re-

moval"; after February 1, 1913, they may be removed by the mayor "subject to the approval of said board of aldermen for such cause as he shall deem sufficient and shall express in the order of removal." Petitioners claim that the statute gives only a power of removal for cause, and that charges, notice and hearing are limitations on the power of removal. As there are no such express requirements in the statute, if they exist they must be found to be therein by inference.

The power of appointment and removal, first given to the governor, and at a fixed date thereafter transferred to the mayor, is conditioned on the approval, in the one case of the senate, in the other of the board of aldermen. Petitioners claim that the absence of an express provision for charges, notice and hearing is without weight, both on principle and on authority of previous decisions of this court; that it is unjust and illegal to remove an officer elected for a fixed term without charges and a hearing. Cases from other jurisdictions are cited which hold that a presumption exists against the grant of an arbitrary power of removal and that a statute will not be construed to give such a power, unless such authority is granted in clear and unambiguous language. Assuming that this is a sound general principle of construction, nevertheless, the construction of each enactment must be made by ascertaining, as far as is possible, the intent of the legislature in view of the particular circumstances.

As the power of removal now vested in the mayor and aldermen was first granted to the governor and senate, it is necessary to consider the extent of such power at the time of its creation.

The general provision in regard to removals from office by the governor is that any officer appointed by the governor, with the advice and consent of the senate, may by him be removed with the advice and consent of the senate (G. L. 1923, C. 30, s. 10). There are numerous other special provisions in regard to various offices: for example, the tax

commissioner (G. L. 1923, C. 38, s. 1) and the bank commissioner (G. L. 1923, C. 274, s. 1) may be removed "for cause shown"; a member of the board of examiners in optometry "for such cause as he" (the governor) "and the senate shall deem sufficient and shall express in the order of removal." (G. L. 1923, C. 161, s. 2); for the board of examiners of barbers (G. L. 1923, C. 156, s. 2) and the state board of public roads (G. L. 1923, C. 97, s. 1) the provisions are the same as in the case at bar. By C. 671, P. L. 1911, approved April 13, 1911, it is provided that notaries public and justices of the peace who have been appointed by the governor may by him be removed in his discretion for cause, after giving to such officer a copy of the charges against him and an opportunity to be heard in his defence. It is to be noted that this last named act was passed within two weeks after the passage of the act now under consideration. The governor may, upon written complaint and after hearing, remove any inspector of steam boilers, "for cause found by him to be sufficient." (G. L. 1923, C. 94, s. 2.) The governor may remove a member of the state board of accountancy for such cause as he shall deem sufficient and shall express in the order of removal (G. L. 1923, C. 211, s. 2). The authority and procedure for removals, as thus appear, have been intentionally varied by the legislature—notice and hearing is required in some cases, in others it is not. The removal may be by the governor, either with or without the consent of the senate as provided by the particular statute; or, as in case of the board of optometry, by joint action of the governor and the senate. That the mere absence in a statute of express provision for charges, notice and hearing is not decisive, was held in *Norton* v. *Adams*, 24 R. I. 97. The chief of police of East Providence had been removed from office without notice or hearing, under a statute which contained no provision for charges and hearing, and which gave the town council power of removal for "misconduct or incapacity." It was held that as the power of removal was limited to the causes specified in the statute

it was immaterial that there was no express provision made for charges and a hearing; that if a specified cause did not exist, the removal was illegal and the aggrieved party had a right to be heard in court; but as a court could not decide whether the removal was legal or illegal without a statement of the grounds on which the removal was made and the facts in support thereof, the power to remove for the two causes named implied that there should be charges and a hearing as clearly as though they were expressly required; the authority of the town council was restricted by the statute and the exercise of that authority was subject to judicial review. The case at bar is different. The power of removal is for such cause as the mayor shall deem sufficient; it is the judgment of the mayor in regard to the sufficiency of the cause, not of the court, which is decisive. He can act on knowledge obtained by his own observation and investigation and he is not restricted in the method by which he makes a decision, which is personal.

Presumably both the mayor and the aldermen know conditions in regard to law enforcement in the city. The mayor is elected by all the voters; the aldermen by property voters only. If they concur in making a removal, it is fair to assume there is some reason for such action; furthermore, some check on the exercise of arbitrary power by the mayor is secured by requiring the approval of the board of aldermen. The statute took away from the mayor, board of aldermen and city council the control of the city police and transferred this power to the police commissioners. In case of riot or tumult the statute provides that the mayor shall have "as the exigency in his judgment shall require" the right to assume control of the police for the time being and it shall be the duty of the board of police commissioners to execute all orders of the mayor for the suppression of such tumult and the restoration of order. This provision suggests one reason for giving the mayor, in the first instance, summary power of removal. As chief executive of the city the mayor is made responsible for the maintenance of law

and order in times of tumult; if the police commissioners refuse at such a time to obey orders, his hands are tied unless he has the power of removal. In such an emergency there is no time for charges and hearing; what is required then is action. It is true that even then the approval of the board of aldermen is necessary; but the responsibility for the failure to take the necessary action is definitely placed. We do not find any evidence in the statute of an intention that there should be a hearing before the board of aldermen. The power of the board is limited to the approval or disapproval of the action of the mayor. The board does not pass on the guilt or innocence of the commissioners, nor is it required to give any reason for its action. In *O'Dowd* v. *Boston*, 149 Mass. 443, the statute, like the one now in question, provided that officers and boards of the city of Boston might remove their subordinates "for such cause as they deem sufficient and shall assign in their order for removal." It was held that there must be a cause in fact for every removal (differing therein from a removal at pleasure) but that the statute did not require charges and a hearing. As stated by the court, the intention of the statute seemed to be to qualify a removal at pleasure, by requiring a record to be made of the cause. As the removal is to be for such cause as the board shall deem sufficient, this does not seem to contemplate a formal adjudication. With or without a hearing, there is a record of the cause of removal and the appeal in either case is to public opinion. The court decided that it could not find in the language or reason of the statute the intention to establish the rule that officers and employees of the city should be removed only after charges made and a trial had upon them. See also *Atty. Gen.* v. *Donahue*, 169 Mass. 18; *Bailen* v. *Assessors of Chelsea*, 241 Mass. 411; *Dittemore* v. *Dickey*, 144 N. E. Rep. (Mass.) 57. In *People* v. *Whitlock*, 92 N. Y. 191, by statute the mayor of the city of Syracuse was authorized to remove from office any police commissioner "for any cause deemed sufficient to himself." It was held that the mayor was

authorized to remove a police commissioner without notice or opportunity to be heard. See also *People* v. *Martin*, 19 Colo. 565; *Matter of Carter*, 141 Cal. 316. In *State* v. *Duggan*, 15 R. I. 403, 409, this court said it is an elementary rule that in the interpretation of statutes a court must look to the language of the law. If this be plain, it must be followed. If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation. It is binding upon the court as upon every citizen.

In the present case the legislature has created an office which is a new agency for the administration of public business. This agency may be terminated at any time in any manner by the power which created it. To remove a public officer without a hearing may or may not be a wise or fair procedure; but the determination of such considerations is for the legislature not the courts. So far as appears, the mayor and board of aldermen acted in good faith. If the removals are improper or unjust the appeal therefrom is to the voters of the city.

In this particular act we do not discover any evidence that the absence of provisions for charges and a hearing was accidental or unintentional. On the contrary, the provisions of the various statutes above-mentioned seem to indicate an intention that no hearing was required. The removal in each case was legal.

The motion in each case to dismiss the petition for writ of *certiorari* is granted and said petitions are dismissed.

*Greene, Kennedy & Greene,* for petitioners.

*Murdock & Tillinghast,* for respondents.