CYRIL JAMES ALLEN *vs.* RHODE ISLAND STATE BOARD OF VETERINARIANS *et al.*

MARCH 27, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This petition for a writ of mandamus was brought in the superior court to compel the state board of veterinarians and the individual members thereof, hereinafter called the board, to allow petitioner to take the examination for the practice of veterinary medicine, surgery and dentistry in this state.

Prior to the trial of the case the petitioner brought in question upon the record the constitutionality of that portion of sec. 4, chapter 718, public laws 1939, which we have italicized in the quotation that follows, alleging that it violated article III; art. IV, sections 1 and 2; art. X, section 1; and art. XII of the constitution of this state. "Sec. 4. Any person not entitled to registration under section three of this act, who has attained the age of twenty-one *and is a graduate of a regular veterinary, medical, surgical and dental school or college of a standard recognized by the American Veterinary Medical Association,* may apply to said board for examination with reference to his skill and knowledge of veterinary medicine, surgery and dentistry, and be so examined at reasonable times, to be determined by said board."

The trial justice held that the above-italicized language of sec. 4 was unconstitutional and granted the prayer of the petition. The case is before us on respondents' appeal from a judgment entered in accordance with that decision.

Two questions are before us for determination. First, did the superior court have jurisdiction to determine a question with reference to the constitutionality of an act of the legislature? Second, if that court had such jurisdiction, was the trial justice correct in holding that the portion of sec. 4, hereinbefore identified, was unconstitutional?

The first question involves a fundamental and vital change in our practice. This is apparently the first time since 1854 that a question concerning the constitutionality of a statute has been determined by any court other than the supreme court of this state. However, the trial justice in this case did not assume jurisdiction without warrant, as he acted under

the provisions of P. L. 1940, chap. 941, to which we will later refer in greater detail.

In 1854 the legislature passed "An Act in amendment of an act entitled 'An Act prescribing the manner of proceedings in Courts.'" In general terms, this act, conferred exclusive original jurisdiction upon the supreme court over a question with reference to the constitutionality of a statute. It provided that when such a question was raised in a trial court, it was the duty of that court to rule the act constitutional and proceed with the trial of the case as though no such question had been raised. It further provided that if judgment were rendered in the case against the party raising the constitutional question, the trial court must then forthwith certify the constitutional question to the supreme court for determination.

The provisions of the act of 1854 continued in force practically without change until 1905, when the present court system of this state was established by the Court and Practice Act, hereinafter referred to as the C. P. A. Sections 474 and 475 of that act again conferred exclusive original jurisdiction upon the supreme court over questions concerning the constitutionality of a statute, making distinction as to the time of certification between civil and criminal cases.

Section 478 of the C. P. A. introduced an innovation in our practice by providing that a question of law of doubt and importance arising in any proceeding prior to the trial thereof on its merits might, in certain circumstances, be certified to the supreme court for determination. The provisions of this section and of sec. 474, just above mentioned, were retained unchanged through the subsequent revisions of our statutes.

In the revision of 1938, sec. 474 appeared as §1, chap. 545, and sec. 478 appeared as §6 of that chapter. At that time §1 read as follows: "Whenever, in any action or proceeding, civil or criminal, pending before any court, the constitutionality of an act of the general assembly shall be brought in question upon the record, the court shall forthwith certify

the question to the supreme court to be heard and determined."

Public laws 1940, chap. 941, repealed §1 and amended §6 of chap. 545 to read as hereinafter quoted. The language italicized by us represents the pertinent change that was made in that section by the amendment. "Sec. 6. Whenever in any proceedings, civil or criminal, in the superior court or in any district court, prior to the trial thereof on its merits, or upon a motion in arrest of judgment, any question of law shall arise, *or the constitutionality of an act of the general assembly shall be brought in question upon the record,* which in the opinion of the court, or in the opinion of the attorney-general, if the state be a party to such proceeding, is of such doubt and importance, and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify such question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined: Provided, that no question shall be so certified in any criminal case where the defendant has not been released on bail."

Between 1905 and 1940 the practice was well established that under §1 all constitutional questions of the kind under consideration must be certified to and be determined by this court, which up to 1940 had exclusive original jurisdiction over such questions. There was some criticism of that practice. The criticism, however, was not directed to the vesting of exclusive original jurisdiction in this court; it was directed to the possible abuse of the provisions of §1, especially in criminal cases, whereby a defendant, seeking delay, could prevent a reasonably prompt trial on the merits by questioning the constitutionality of a statute *before* trial. In that event, both the court and the attorney general, who is charged with the prosecution of all criminal matters in the superior court, were powerless to prevent the certification *forthwith* of such constitutional questions to this court, even

though it might fairly appear that the question was raised mainly for delay.

We note here that no such abuse was possible when the constitutionality of a statute was questioned *during* the trial of a criminal case because under §2, which has not been changed, such question was reserved to be later certified to this court for determination if the defendant were found guilty.

These were the conditions as to jurisdiction and practice in the matter of certification of a question concerning the constitutionality of a statute that prevailed until the enactment of P. L. 1940, chap. 941. If by enacting that statute the legislature intended to correct only a possible abuse in criminal cases under the peremptory language of §1 as to the time of certification, it could have done so by amending rather than by repealing that section, so that whenever a question of the constitutionality of a statute was raised in a criminal case *before* trial, the question would be reserved and certified to this court for determination only if the defendant were convicted, thus making §1 conform with the provisions of §2. On the other hand, if the legislature actually intended to divest this court of its exclusive original jurisdiction over questions of the constitutionality of a statute and to vest jurisdiction to determine such questions in the first instance in our trial courts, the legislature had full power to make that change.

Whether or not this latter result was actually intended, the fact remains that the legislature expressed itself in direct, plain and unmistakable language in P. L. 1940, chap. 941, by which it repealed §1 and amended §6. As a result of such method of amendment we point out, among other things, that a question concerning the constitutionality of a statute may now be determined, in the first instance at least, by any one of the eleven justices of the superior court and by every justice, assistant justice or clerk authorized to act as a justice of any one of the twelve district courts; that the determination of such question by one of those courts is not binding on

the other, so that contrary conclusions on the same question might well be reached; that, in different cases raising the same question, different justices of the same court might decide the question in conflict with each other; and that, subject to the provisions of §6, as amended, unless a case involving a question of the constitutionality of a statute were brought to this court by appellate proceedings, the determination of such question by the superior or district courts would stand only for the case in which it was made and therefore would not bind all the people of this state.

Our purpose in mentioning the possible, if not probable, effects that may follow under P. L. 1940, chap. 941 is to point out the radical change in practice that was made by that act in the matter of jurisdiction over questions concerning the constitutionality of a statute, so that if the legislature did not intend to bring about the possible far-reaching results above mentioned, it will be seasonably advised of the judicial interpretation of what it has actually done.

However, the legislature has spoken directly and plainly in chap. 941. There is no ambiguity in the language of that act which permits judicial construction and it is not for us to change the clear meaning of that language. By repealing §1 and by amending §6 of chap. 545, the supreme court was divested of its former exclusive original jurisdiction over a question of the constitutionality of a statute and jurisdiction over such question was conferred upon the superior and district courts, there to be treated, except in the special circumstances provided for in that section, as an ordinary question of law. It is therefore our opinion that the trial justice in the instant case had jurisdiction to determine the constitutionality of the challenged portion of sec. 4, chap. 718, P. L. 1939.

The second question before us is whether the trial justice was correct in deciding that a portion of the section hereinbefore identified was unconstitutional. In this respect he was in error. It is well to recall at this point that the petitioner challenged the constitutionality of that part of sec. 4 which provides that an applicant for examination to qualify for the

practice of veterinary medicine in this state must be a "graduate of a regular veterinary, medical, surgical and dental school or college *of a standard* recognized by the American Veterinary Medical Association". (italics ours)

It is admitted that the American Veterinary Medical Association, hereinafter referred to as the association, is incorporated under the laws of Illinois and has its place of business in the city of Chicago in that state. It does no business in Rhode Island and has not appointed a resident agent or attorney in this state on whom service of process may be made. The veterinary school or college from which petitioner graduated was not on the list of schools or colleges approved by the association at the time petitioner filed his application. The board refused petitioner permission to take the examination required by the statute. The petitioner thereafter instituted the present proceedings in mandamus, claiming, in substance, that the above-quoted part of sec. 4 was unconstitutional in that it was a delegation of legislative power to a foreign entity existing and operating entirely outside of this state, with no resident agent or attorney here upon whom process could be served, and therefore completely beyond the jurisdiction of our courts to control in case of abuse of discretion or arbitrary conduct.

We concede that the challenged language of sec. 4 is not clear but we do not agree that such language is open only to the interpretation given to it by the petitioner, which was followed by the trial justice. It is well established that if a statute is susceptible of two reasonable constructions, one of which would raise a serious question of its constitutionality and the other would not, then the former construction should be rejected and the latter adopted. *State* v. *Fay*, 65 R. I. 304; *Edwards* v. *Cardarelli*, 65 R. I. 236, and cases cited.

The basic problem in the instant case, as in all instances of statutory construction, is to ascertain the intention of the legislature from the language used by it. There can be no doubt that the legislature intended to regulate the practice of veterinary medicine in this state, and that in furtherance

of such purpose it required that an applicant for admission to that practice should be a graduate of a "regular" veterinary school or college, as graduation therefrom would indicate, to some extent at least, that the applicant had prosecuted a necessary course of study. But the legislature undoubtedly appreciated that although an institution might term itself a regular veterinary school or college, its course of instruction might be inadequate or otherwise defective because of the immaturity of the institution, or a deficiency of curriculum, or doubtful competency of instruction, or a combination of these elements. The legislature therefore deemed it necessary to provide that the school or college which the board could recognize must meet a reasonable and fixed standard of competency.

Apparently the legislature, in considering a standard of its own, sought information and guidance from sources which it deemed both competent and reliable. From the language of sec. 4 the inference is clear that it finally decided to adopt for itself the standard of the association as fixed and known in 1939, when chap. 718 was enacted, in the conviction, apparently, that the graduate of any veterinary school or college which satisfied such standard should be admitted by the board to take the required examination. It therefore provided that the veterinary school or college from which an applicant graduated must be *"of a standard recognized by the American Veterinary Medical Association"*, that is, when found by the board to be of a standard equal to that fixed and approved by the association as of that date. (italics ours)

In the absence of any evidence to the contrary, we must assume that the standard of the association was fixed and openly promulgated in 1939; that such standard was ascertainable by and in fact known to the legislature when it adopted that standard as its own in enacting chap. 718; and that the standard adopted by the legislature was known or ascertainable by the board and all others in interest. Our decision of the question under consideration would be entirely different if the standard mentioned in the challenged

part of sec. 4, instead of being fixed and known or knowable to all, rested merely in the minds of the directors or other officials of the association as one subject to being changed or altered as best suited the convenience or interests of an association over which the state had no control.

We first direct attention to the fact that the legislature was not concerned with the particular veterinary schools or colleges that were then approved by the association in 1939. While the legislature adopted as its own the fixed and known standard of that association as such standard stood in that year, it clearly did not intend that, unless a school or college had the approval of the association, the board in this state was powerless to determine for itself whether a school or college without such approval met or failed to meet the required standard. If the legislature had so intended, it could and would have expressed itself in different terms, rather than provide, as it did in sec. 4, that the school or college must be "of a standard" recognized by the association. We interpret the quoted phrase plainly to mean that, irrespective of any approval or disapproval by the association of a particular veterinary school or college, it was the duty of the board to determine for itself whether the school or college from which an applicant graduated did in fact meet the standard adopted by the legislature, which was the same standard under which the association operated in 1939.

We are also of the opinion that, in so far as the standard specified in sec. 4 is concerned, the legislature did not intend to authorize a standard that the association could change at will. The standard recognized by the association in 1939 and which the legislature adopted as its own in sec. 4 remains the same for the purposes of chap. 718, notwithstanding any change that the association for its own purposes may have made since 1939 or may hereafter make respecting such standard. If the standard specified in sec. 4 is to be changed, the power to make that change rests exclusively in the legislature. It may do so directly by suitable legislation, or it may delegate to the board, within proper limits, power to

382

alter or amend the standard, fixed in that section, by means of rules and regulations having the force of law.

For the reasons stated, we find that the challenged language in P. L. 1939, chap. 718, sec. 4, as we have construed it, is not in violation of any of the provisions of our constitution referred to by the petitioner, and that such section, in so far as challenged by him, is constitutional. Our construction of that section as herein limited makes it unnecessary to consider, because inapplicable under such construction, the cases upon which the petitioner and the trial justice relied in reaching a contrary conclusion.

In view of our conclusion the present petition for a writ of mandamus should be denied and dismissed without prejudice to the petitioner to renew, if he sees fit, his application to the board for permission to take the examination required by G. L. 1939, chap. 718. At that time it will be the duty of the board to determine, in accordance with this opinion, whether the school or college of which he is a graduate meets the standard fixed in sec. 4 of that chapter as above construed.

The respondents' appeal is sustained, the judgment of the superior court is reversed, and the case is remitted to the superior court for the entry of a judgment denying and dismissing the petition.

*Francis I. McCanna*, for petitioner.

*John H. Nolan*, Attorney General, *James F. McCoy*, Counsel, for respondents.