JOHN H. NOLAN, ATTY. GEN. *vs.* REPRESENTATIVE COUNCIL OF CITY OF NEWPORT.

MARCH 12, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a petition for mandamus to compel the representative council of the city of Newport to call a special election to fill a vacancy in the office of mayor caused by the death of the incumbent on January 2, 1948.

The petition alleges that the representative council adopted a resolution on January 6, 1948 acknowledging the existence of a vacancy in the office of mayor and declaring that the charter of the city provided that the chairman of the board of aldermen in such a situation should perform the duties of mayor and that as the chairman was willing to act as mayor no special election need be called. Respondents admit those allegations. The issue between the parties, therefore, is solely one of law. Does the city charter impose upon the representative council the duty to call a special election to fill a vacancy occurring in the office of mayor or is the council vested with discretionary authority in the matter?

The answer to that question involves a construction of secs. 24 and 26 of the city charter, public laws 1906, chapter 1392. The pertinent part of sec. 24 provides that the board of aldermen "shall elect a chairman who shall preside and perform the duties of the mayor in case of the absence or inability of the mayor to act." The provision of sec. 26 which is involved reads as follows: "In case of vacancy in the office of mayor or of any member of the board of aldermen the representative council may call a special election to fill the vacancy."

Respondents contend that sec. 26 clearly vests them with

discretionary authority by virtue of the legislature's use of the word "may" therein instead of the word "shall" and therefore there is no need to construe sec. 24. However, they further argue that should this court deem it necessary to construe that section it is plain that the words thereof, "in case of the absence or inability of the mayor to act" comprehend a vacancy in that office.

We think that it is necessary to know the scope of sec. 24 in order to determine whether it is reasonable to construe sec. 26 as vesting in the respondents a discretionary authority rather than an obligatory duty. It could well be that if sec. 24 comprehends a vacancy in the office of mayor so that the duties thereof could be lawfully performed by the chairman of the board of aldermen as the acting mayor, it would not be unreasonable to construe sec. 26 as vesting respondents with discretionary authority to call a special election. On the other hand if sec. 24 does not comprehend a vacancy the city would be left without anyone lawfully authorized to exercise those duties. In that case it would be clearly unreasonable to construe sec. 26 as respondents contend.

We cannot agree with respondents' contention that "In the strict sense of the words, a mayor who has died is certainly absent and incapable of acting." In legal terminology a dead person is not spoken of as merely absent. Only figuratively are the dead spoken of as absent. Absence connotes that a person is in being but not present in some particular place, and not that he has departed this life. Respondents cite no authority for their position except to point out that, in *Gelinas* v. *Fugere*, 55 R. I. 225, this court has said that absence in a statute of this general type should be reasonably and not literally construed. That case did not involve a vacancy in the office of mayor. It concerned a mere temporary absence of the mayor from the city of Woonsocket for a few hours. Such absence, we held, was not one contemplated by the legislature in providing that the president of the board of aldermen should act in the absence of the mayor. In the circumstances of that case

we found that the mayor was not absent and in doing so stated that the word "absence" should be given a reasonable construction. Obviously that case is not in point here.

We have found no case which holds that a vacancy caused by death is governed by a provision relating to the mere absence of the incumbent or his inability to serve. Petitioner, however, has cited a case almost on all fours to the contrary. *Babbidge* v. *City of Astoria*, 25 Ore. 417. As far as we are aware that case is in the current of authority. However, apart from authority, we are of the opinion in the case at bar that, on reason, it is clear that the legislature did not intend by sec. 24 to provide against the contingency of a vacancy in the office of mayor when it provided that the chairman of the board was to perform the mayor's duties in case of his absence or inability to act.

We are confirmed in this view by a comparison of the provision of the present charter with a provision covering this matter in the earlier charter, P. L. 1875, chap. 454, sec. 4, as amended by P. L. 1878, chap. 657, section 1. Originally the legislature provided that there should be a president of the board of aldermen, "who, in the absence of the mayor from the city, *or in case of his death or disability, shall exercise for the time being all the powers and duties of the mayor.*" (italics ours) The words which we have italicized show a clear recognition by the legislature of the distinction between death and a mere absence. They are not treated as synonymous. They are referred to disjunctively, and in adopting such phraseology the legislature was following the language of our state constitution governing similar situations which might arise thereunder. Article VII, secs. 9 and 10, and article of amendment XIV, sec. 2. When the legislature amended the charter in 1906 it eliminated the italicized words and restricted the power of the chairman of the board of aldermen to act as mayor only "in case of the absence or inability of the mayor to act." The elimination of the word "death" is significant. We cannot treat it as a legislative oversight and supply the

omitted word. Where the legislature in amending an act thus purposely omits words in the amended act the court has no authority to supply the omitted words. *State* v. *Dobry,* 217 Iowa 858; *Morse* v. *City of Boston,* 253 Mass. 247.

We are, therefore, of the opinion that sec. 24 does not authorize the chairman of the board of aldermen to perform the duties of the mayor in the case of a vacancy in that office created by the mayor's death. We find no other provision in the charter which authorizes the chairman or anyone else to act as mayor in case of a vacancy. Such a contingency appears to have been provided for only by sec. 26. Therefore, unless a special election is called in accordance with that provision, the special powers vested in the mayor cannot lawfully be exercised by anyone. In so holding we pass no judgment on the act or acts of anyone who has assumed the exercise of such powers since the death of the mayor. That question is not now before us.

■■ We now come to a consideration of the character of the power conferred upon the representative council by sec. 26. The key to the solution of that question is the meaning of the word "may" in that section. The usual and ordinary meaning of the word is permission and not compulsion. However, it is not always and necessarily given that meaning in the construction of statutes. It is sometimes construed as "shall," "but whether in any given case it has the meaning of *may,* or *shall,* depends on the intent of the legislature, to be ascertained from the context and design of the statute." *Moies* v. *Economical Mutual Life Ins. Co.,* 12 R. I. 259, 262. The ascertainment of such intent is always the primary purpose of statutory construction and it is to be found from a consideration of the language, the nature and the object of the statute. *State* v. *Muldoon,* 67 R. I. 80. In the instant case we must apply that cardinal canon of construction to the whole charter in order to determine if the legislature meant by the use of "may" in sec. 26 to leave it entirely to the discretion

of the representative council whether the city of Newport, in the event of the death of the mayor, should be left without anyone lawfully authorized to exercise the special powers of mayor.

The nature and object of P. L. 1906, chap. 1392, is manifest on its face. It provides a special and distinctive form of city government for Newport and secures to the several classes of qualified electors of that city the right, in varying degree, to participate in the choice of officers charged with the conduct of such government. When that statute was passed the state constitution did not permit registry voters to vote in the election of the city council of any city. Article of amendment VII, section 1. Consequently the statute provided such voters with the right to vote only for the office of mayor and school committee. Only the property voters could vote for members of the board of aldermen and the representative council. As far as the legislature was able to do so it secured to the registry voter some right to participate in the choice of officers of the city government by thus according them the right to vote for mayor. Without that right registry voters would have been disfranchised as far as such government was concerned, the school committee not being a part of the government of the city but an agency of the state elected locally. It is reasonable, therefore, to infer that in enacting chap. 1392 the legislature clearly intended that no class of voters should be without some voice in the government of the city.

If that was the general intent of the legislature is it reasonable to find that it had a different specific intent in providing in sec. 26 for a contingency in which death removed the sole representative of the registry voter from the city government? Moreover did the legislature intend to delegate to the representative council, a body chosen only by the property voters, the discretionary power to decide in such a contingency whether the registry voters should continue to have a voice in the government of the city? These questions demand answers even though all the voters

now are constitutionally qualified to vote for members of the representative council. Article of amendment XX, section 1, adopted November 6, 1928. Of course the intent of the legislature is to be found by considering the circumstances in 1906 in which it enacted chapter 1392, and not those of today.

On the facts here the legislature's use of the word "may" is not necessarily controlling. After considering the context and design of the whole charter and the purpose of local self-government which the legislature was seeking to accomplish by its enactment, we think it is unreasonable to say that the legislature intended to leave it wholly to the discretion of the representative council whether a special election should be called to fill a vacancy in the office of mayor or alderman. Conceivably such a discretion could result in Newport being left without a mayor for almost the full term of two years, if he died shortly after his inauguration, and for that matter also without a board of aldermen as well, if certain vacancies occurred therein during the term. Whether the representative council in such circumstances would be likely to refuse to call a special election does not concern us. We are concerned here with the question whether they have the discretionary power to so refuse.

In a case in New York where a similar problem was posed, the village trustees having refused to call a special election to fill a vacancy in their number, the court held that, notwithstanding the legislature's use of the word "may" in conferring power upon the trustees to call such an election, there was a duty imposed. "If it is discretionary," the court said, "as members of the board of trustees drop out, whether to call an election or not, they might thus be reduced to one man and the representative character of the government destroyed.. . . . Where a public body is clothed by statute with power to do an act which the public interests require to be done, the execution of the power may be insisted on as a duty though the statute conferring

the power appears to be only permissive in terms." *People ex rel. v. Board of Trustees,* 71 Hun. 188.

In such circumstances the construction of the word "may" as "shall" is well established. *Supervisors v. United States,* 4 Wall. 435; *State ex rel. v. Common Council of Rahway,* 33 N.J.L. 110; *Cummings v. Looney,* 89 Conn. 557; *Larson v. Marsh,* 144 Neb. 644. A clear statement of this principle is to be found in Endlich on the Interpretation of Statutes, §310, as follows: "Whenever the act is to be done for the benefit of others, the word 'may,' or any of its equivalents, simply confers a power or capacity to do the act. It is facultative, not permissive; and neither by its own connotation, nor by force of any legal principle, does it necessarily imply an option to abstain from doing the act. On the contrary, it is a legal, or rather a constitutional principle, that powers given to public functionaries or others for public purposes or the public benefit, are always to be exercised when the occasion arises."

Of course the rule is not applicable where it is otherwise manifest from the act that the legislature did not intend to use "may" in the sense of "shall." *State ex rel. v. Thim,* 130 Conn. 710. In that case the act provided that the town meeting may fill a vacancy in an elective town office, but until such meeting filled it the "vacancy may be filled by the selectmen." The act also provided in another section that "on application of twenty inhabitants qualified to vote in town meetings" it was the duty of the selectmen to call a town meeting to fill such vacancy. There it will be readily seen that the legislature clearly intended that the selectmen must call such meeting only upon the demand of twenty qualified electors and that otherwise the power was discretionary in the selectmen. In that case therefore no reason existed for the court to construe "may" as "shall" and thus impose a duty upon the selectmen to call a town meeting in the absence of such a demand. The legislative act itself plainly provided in what circumstances the exer-

cise of the power to call a town meeting to fill a vacancy was mandatory upon the board of selectmen.

Respondents have cited *State* v. *Mayor of Pawtucket,* 18 R. I. 350, and *In re Representation. Vacancy,* 15 R. I. 621, as controlling on the question before us. The second citation is not a litigated case but merely an advisory opinion of the judges to the governor of the state. The question posed by the governor's letter .was whether he or the legislature had the power to call a special election to fill a vacancy in Congress. After answering that question in favor of the governor's authority to call an election the judges went on to say: "and, having the power, we think it is for your Excellency to decide whether, considering how soon the Forty-ninth Congress will terminate, it is your duty to exercise it." That the court was called upon to give its opinion only upon the question whether the governor or the legislature had the power to call the election is stated by the judges themselves in a later opinion on a cognate question, *In re Congressional Election,* 15 R. I. 624. In any event we think the opinion cited by respondents is not in point on the question here.

In the case of *State* v. *Mayor of Pawtucket, supra,* this court merely decided that it would not issue mandamus to compel respondents to call a special election at an earlier date, they having called it for the same day as the general election, after having already called seven special elections all of which were held but proved abortive because no one received a majority of the votes cast. That case also is manifestly not in point on the question here.

There is no case in this state, as far as we are aware, that has passed upon the precise question which is presented in the case at bar. And no case from any other jurisdiction has been cited to us which would lead us to conclude that in a situation like the instant one we ought to give sec. 26 a literal construction regardless of the consequences which such a construction entails. On the other

hand courts of respectable authority have held, in cases cited by the petitioner, that elections of public officers involve questions of such public interest and welfare that the legislature must have intended, in delegating power to call special elections to fill vacancies in such offices, that its exercise was mandatory and not merely discretionary.

█ Aside from authority, and viewing the whole problem in the light of the amendments made by the legislature in the charter of 1875, which provided a representative charter of government for the city of Newport on as popular a basis as was then permissible under the state constitution, it is more consonant with the true intent of the legislature to adopt a construction of sec. 26 that will assure to the qualified electors of Newport an opportunity to elect a mayor. This is especially true since a literal construction of that section would not only deny to the people the right to vote for mayor but would also leave the city without anyone who could lawfully exercise the special powers of mayor under the charter. A construction that leads to such a result should not be given to a legislative act that is otherwise susceptible to a more reasonable interpretation. We should adopt that meaning which will conform to the scope of the act and carry out the purpose of the whole statute. *Blais* v. *Franklin*, 31 R. I. 95.

██ We are of the opinion, therefore, that sec. 26 imposes a mandatory duty upon the representative council to call a special election, within a reasonable time, to fill the existing vacancy in the office of mayor. That duty is ministerial and mandamus lies to compel the representative council to perform it. Since the council has by formal resolution heretofore expressly declined to call such an election petitioner need not make demand upon them to act.

The relief prayed for in the petition is granted, and mandamus may issue commanding the representative council to call, within a reasonable time and in accordance with law, a special election to fill the vacancy in the office of mayor.

*John H. Nolan,* Attorney General; *Archie Smith,* Assistant Attorney General; *Jeremiah P. Mahoney and Matthew J. Faerber,* for petitioner.

*Alexander G. Teitz,* City Solicitor, for respondents.