ORIST D. CHAHARYN *vs.* DEPARTMENT OF EMPLOYMENT SECURITY.

SEPTEMBER 6, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

76

PAOLINO, J.   This petition to review the decision of the board of review of the department of employment security denying the claim of Orist D. Chaharyn for benefits under the employment security act, general laws 1938, chapter 284, as amended by public laws 1949, chap. 2175, was filed by him in the superior court.   After a hearing thereon that court entered a decree reversing the decision of the board of review and awarding the claimant employment security benefits.   The cause is here on an appeal by the Department of Employment Security, hereinafter called the department, from that decree.

The facts are not in dispute.   For several years claimant had been employed during the day as a designer and attended law school evenings.   He had passed his bar examination, but before he could be admitted as a member of the Rhode Island bar he was required, by the rules of the supreme court, to serve a clerkship in a law office for a period of six months.   These rules required that throughout such period the study of law had to be his chief occupation during the ordinary business hours of the day.   To comply therewith claimant voluntarily gave up his job as a designer and on the following day commenced his law clerkship.

Thereafter claimant went to the local office of the department to "register for work" and to file a claim for statutory benefits.   He included in his application a signed statement that he had left his job voluntarily for the purpose of pursuing his law clerkship and that he would *not* be available for other employment during the hours he was so serving. On the basis of this statement his claim for benefits was denied.   The claimant thereupon duly filed an appeal to the board of review of the department.

At the hearing before such board claimant testified that he left his job to pursue his clerkship; that he had since been occupied as a law clerk from 9 a.m. to 5 p.m. daily; that he would not be available for other employment during the hours he was serving his clerkship; and that he had made inquiries about securing night work. The board entered a decision in which it made findings of fact based on the evidence submitted and concluded that "Claimant left his employment with good cause." However, the board also decided that "claimant could not be considered eligible for the receipt of benefits because he could not be considered available for work as required by the Employment Security Act." The claimant thereupon filed in the superior court a petition to review the board's decision under the provisions of G. L. 1938, chap. 284, as amended by P. L. 1949, chap. 2175.

On the record in the superior court the trial justice decided: (1) That the claimant was unemployed within the meaning of the act as amended by P. L. 1949, chap. 2175; (2) that he had proved his availability by registering for work and by filing a claim for benefits in compliance with G. L. 1938, chap. 284, §7 (2), as amended by P. L. 1949, chap. 2175, hereinafter referred to as sec. 7 (2); and (3) that there was no proof that if tendered employment he would not accept it. The trial justice based his decision upon his construction of sec. 7 (2) and interpreted the phrase "available for work" together with the next clause of said section, namely, "whenever duly called for work through the employment office" to mean "that when an applicant is unemployed he is entitled to benefits unless having been called for work he refuses it." No effect was given to claimant's application and to his uncontradicted testimony that he would not be available for other employment during the hours he was serving his clerkship. The question whether he left his job for good cause under the act is not considered here, since both the board of review and the

trial justice found that to be the fact. In our opinion the statement and evidence of restricted availability raises the decisive issue in the case and for such reason we shall determine this question first.

The claimant contends in substance that the legislature provided in sec. 7 (2) for a statutory rule of proof of availability for work, namely, that all a claimant is required to do to prove he is available for work is to "register for work" and file a claim for benefits. He further contends that he has satisfied both of these requirements and therefore has complied with the law and is entitled to benefits, because there is no proof that he was offered suitable work and had refused.

Although the department has filed eleven reasons of appeal the main contention on its behalf is that the decree of the superior court is based upon an erroneous interpretation of sec. 7 (2) of the amended statute. After a careful reading of the record and the pertinent provisions of the employment security act we are of the opinion that the trial justice's interpretation of sec. 7 (2) was erroneous.

Since the statute in question does not define the phrase "available for work" we must examine the whole statute for guidance in order to determine the intent of the general assembly. It is well established that the primary purpose of statutory construction is to ascertain legislative intent. That is to be found from a consideration of the language, nature and purpose of a statute. A statutory provision should be so construed as to conform to the reasonable scope of the whole statute and to carry out the purposes thereof. *Nolan v. Representative Council*, 73 R. I. 498.

In the case at bar we are greatly aided in this respect by the inclusion in §2 of the amended statute of a "Declaration of Policy," which states in substance that the purpose of the act is to lighten the burden which now falls on the unemployed worker and his family from economic insecurity due to unemployment which the individual worker is as

incapable of protecting himself against as industry is of preventing it. The construction of the phrase "available for work" should be consistent with the expressed general purpose which the law was designed to achieve. The employment security act, even when liberally construed, was designed to provide benefits for unemployed individuals who are ready, willing and *able to work, but who are unable to find it*. There is nothing in the statute to justify the conclusion that the legislature intended that a claimant might limit or restrict his availability for work to certain hours of the day, at least where the work he is qualified to perform is not likewise limited. To permit a claimant to place such restrictions on his availability, other than as specifically provided for in the statute, would violate the spirit and purpose of the act. Consequently a construction which leads to such a result should not be given to a legislative act, especially where it is susceptible of another and more reasonable interpretation.

We have examined numerous cases in other jurisdictions having statutes substantially similar to the Rhode Island act. These cases hold generally that a claimant may not impose conditions and restrictions on his willingness to work and still be "available for work" within the meaning of the statute. This problem has presented itself in different aspects such as a declared willingness or unwillingness to work only on certain days, or only at certain hours, or on certain shifts. In all of the cases we have examined the courts have consistently construed the words "available for work" to mean an unrestricted availability.

It is likewise our opinion that the legislature intended the phrase "available for work" as used in sec. 7 (2) to mean that in order for an unemployed individual to be "eligible for benefits in any week of his partial or total unemployment" he must register as able and willing to work and be ready to accept any suitable work whenever offered to him without attaching thereto any restrictions or conditions

other than those specifically provided for in the statute. Unless he complies with such registration and filing requirements he is not eligible for benefits.

In our opinion a claimant who in advance materially restricts or limits his availability and willingness to accept work, other than as specifically provided for in the act, has not registered *for work* under the act. At the very beginning such a registrant in substance and effect disqualifies himself as ineligible to receive benefits, since he is not then registered as "available for work" within the meaning of the act.

It is also our opinion that the inclusion in sec. 7 (2) of the phrase "whenever duly called for work through the employment office" is a second step in the procedure *to test* or prove his availability that has to be first declared in his application but was not intended by the legislature to restrict the ordinary meaning of the words "register for work." On the contrary, we are of the opinion that the legislature intended that a claimant, in order to be eligible for any benefits, must first register for work in a way that shows he is unequivocally ready, willing and able to accept suitable work then and at all times whenever it may be offered. In our judgment any other interpretation would in effect strike out the words "for work" and give them no reasonable effect, thereby reducing the provision to one of *mere* registration, which is not consistent with the language and the declared purpose of the act.

The claimant's contention that he met the requirements of the statutory rule of proof of availability is therefore an assumption without merit. Section 7 (2) provides that "To prove such availability *for work,* every employee partially or totally unemployed shall *register for work* and shall file claim for benefits * * *. No individual shall be eligible for benefits for any week in which he fails, without good cause to comply with such registration and filing requirements." (italics ours) This portion of sec. 7 (2) sets out in clear and unambiguous language the manner in which an unem-

ployed person must prove his availability for work. The first and basic requirement is that he "register *for work*." (italics ours)

That phrase should be given its literal and ordinary meaning. It is not the same as if it read "register for work *conditionally.*" Nor does it mean that a claimant shall merely *"register,"* since that leaves out the qualifying words "for work." On the contrary it expressly provides and means that a claimant shall *register for work* as those terms are usually understood. In our opinion it would be unreasonable to construe such phrase to mean that a claimant could register with such conditions or restrictions that he thereby precluded in advance any reasonable possibility of employment except that of his own choosing. If the legislature had intended such aid to be so unrelated to present availability for employment it could and would easily have required mere registration. It is our opinion that by the use of the phrase "register for work," the legislature intended a claimant must first register *for work* in a way that will genuinely attach him to the labor market without any conditions or restrictions, other than those provided in the statute, in order to become eligible for aid and an offer of a job.

In the instant case the claimant's registration was expressly restricted and conditioned in advance so as to substantially remove him from the labor market and in our opinion it did not comply with the first requirement of sec. 7 (2) that he must register *for work*. The claimant represented on his application that he was *not* available for work during the daytime, although ordinarily most people in his category work then and he had been so working when he voluntarily quit his job. If he could so limit his registration in advance, there is nothing in the act or in logic to prevent him from going still further and restricting his availability to certain special days. Certainly a man who could restrict his availability for work, for example, to the twenty-ninth day of February, would not be registering for work so as to be presently and genuinely attached to the labor market.

In our opinion by the language under consideration the legislature did not intend to leave such a possibility or discretion to the claimant. In any event the claimant here did not "register for work" as contemplated and required by the statute and therefore he did not prove his basic availability for work. As a consequence he was ineligible for benefits under the act. In the circumstances it is not necessary to consider the other issues raised by the parties.

The appeal of the Department of Employment Security is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for entry of a decree in accordance with this opinion.

CONDON, J., dissenting. In my opinion sec. 7 (2) needs no construction. Therefore it should be applied as it is written. That is what the trial justice did, and I think correctly. The section expressly provides that an unemployed person shall prove his availability for work by registering for work and filing a claim for benefits at the employment office. The appellee complied with those requirements. He thereupon became eligible for benefits.

However, the section also provides that he shall not be eligible in any week "unless in such week he is physically able to work and available for work, *whenever duly called for work through the employment office.*" (italics supplied) In other words the section itself clearly specifies the time when his availability for work may be questioned. If he refuses the work offered, the administrator may then, and not until then, inquire into whether he is actually and truly available for work in accordance with his registration.

The appellee was never duly called for work. For that reason the trial justice held that his availability for work could not be questioned, and that he was eligible for benefits in accordance with his registration. I agree with such application of the section, and furthermore I think it is imperative.

The section as it is written is admittedly extremely lib-

eral, but for that matter so is the whole chapter providing for employment security. Apparently the legislature quite definitely and clearly intended such liberality because they expressly provided in sec. 19: "This act shall be construed liberally in aid of its declared purpose which declared purpose is to lighten the burden which now falls on the unemployed worker and his family."

It may well be that under sec. 7 (2) as it is written it is possible for one who is not truly available for work to receive benefits until he is actually offered work and refuses it. However, that is the way the legislature drafted the section and this court is without authority to redraft it to effect what may appear to us a wiser or more prudent policy. We have heretofore in several cases stated that principle. *Moretti* v. *Division of Intoxicating Beverages,* 62 R. I. 281; *Goldman* v. *Forcier,* 68 R. I. 291; *Carlson* v. *McLyman,* 77 R. I. 177. We have also frankly acknowledged our lack of power to change the clear meaning of the legislative language, *Allen* v. *Rhode Island State Board of Veterinarians,* 72 R. I. 372, *Korjian* v. *Boghigian,* 60 R. I. 73, or to search for a meaning beyond the words of the statute, *Hathaway* v. *Hathaway,* 52 R. I. 39. Where a statute contains its own definition of words used therein this court long ago held that it had no right to look elsewhere for their meaning. *State* v. *Foster,* 22 R. I. 163. Here the statute prescribes how availability for work shall be proved, which is equivalent to a definition of that term. In short, we have always adhered to the view that in construing a statute we were not at liberty to substitute our own ideas of its justice, expediency or policy for those of the legislature. *Blais* v. *Franklin,* 31 R. I. 95; *Bloomfield* v. *Brown,* 67 R. I. 452.

Of course, I recognize that the majority view sec. 7 (2) as ambiguous and therefore claim the right and power to construe it. I respectfully submit, however, that such view is not borne out by the section as it is written. It seems to me that my brethren have imported an ambiguity into the

statute by refusing to give any effect to the clause italicized above, namely, "whenever duly called for work through the employment office." I prefer to read and apply the section as it is written. Indeed I acknowledge that I am bound to do so. "If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation. It is binding upon the court as upon every citizen." *Smith* v. *Soucy*, 46 R. I. 417, 424.

In construing the provision of a constitution or a statute nothing so becomes a court of last resort as a frank and generous recognition of the just limits of its authority in the performance of this necessary yet delicate duty. Having no superior to revise and correct its errors, it should be most scrupulous in refraining from trespassing upon the constituent rights of the people in the one case and from invading the province of the legislature in the other. Thus is promoted that harmony so greatly to be desired between the coordinate legislative and judicial departments of the government. To the accomplishment of that salutary objective all the canons of construction of constitutions and statutes are directed; and none more so than the canon which declares that where the language of a statute is clear there is no room for judicial construction.

Because I am convinced that sec. 7 (2) is clear and should be applied as it is written and because I think the trial justice has correctly applied it, I must dissent from the majority opinion. I may add that I have not examined any cases from other jurisdictions, as it appears to be admitted that the statute of no other state contains a provision like sec. 7 (2). Hence language of courts construing statutes lacking such a section would not be helpful here.

*Orist D. Chaharyn*, Petitioner, pro se.

*Marshall D. Marcus*, for Department of Employment Security.