CHARLES KMIEC *et ux. d.b.a.* KNOTTY PINE CAFE *vs.* LIQUOR CONTROL HEARING BOARD, CHARLES F. REYNOLDS, *Liquor Control Adm'r.*

APRIL 11, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

258

PAOLINO, J. This is a petition for a writ of certiorari directed to the liquor control hearing board, hereinafter referred to as the board, and the liquor control administrator, referred to as the administrator. Pursuant to the writ the papers have been certified to this court.

The petitioners sought an order of this court quashing the decision of the board suspending their license. They further prayed that until the instant petition is disposed of the decision of the board be stayed and the administrator enjoined from taking any further action. We entered an order staying the decision of the board and enjoining the administrator, in accordance with the terms of a stipulation assented to by all the parties in interest, until further order of this court.

The petitioners are the holders of a class B victualer beverage license in the city of Central Falls. On February 13, 1956 at 11:20 a.m. two inspectors from the office of the liquor control administrator, while making a routine inspection of the premises in which petitioners operated the Knotty Pine Cafe under such license, found an Armstrong daily

race sheet dated February 11, 1956 and also a Morning Telegraph race paper dated February 13, 1956 containing race entries for that day. They also found on the back bar of the premises two closed, but unlocked, cigar boxes. One of these contained $113.75 in cash and a slip of paper and the other contained the sum of $22.20 and six white slips, each of which bore penciled numbers, letters and names. A record of what was found was made by one of the inspectors on the back of the inspection report, which was signed by the two inspectors and one of the petitioners, Charles Kmiec, who was in charge of the premises. The articles listed were taken from the premises by the inspectors.

Thereafter petitioners were duly notified to appear before the administrator to show cause why their license should not be suspended or revoked for a violation of general laws 1938, chapter 163, §10, as amended, now G. L. 1956, §3-5-23, the pertinent portions of which read as follows:

> "If any licensed person shall permit the house or place where he is licensed to sell beverages under the provisions of this title to become disorderly so as to annoy and disturb the persons inhabiting or residing in the neighborhood thereof, *or shall permit any gambling or unlawful gaming to be carried on therein* * * * in addition to any punishment, penalty or penalties which may be prescribed by statute for such offense, he may be summoned before the board, body or official which issued his license or before the liquor control administrator when he and the *witnesses for and against him may be heard*; and if it shall be made to appear to the satisfaction of the board, body or official hearing such charges that he has violated any of the provisions of this title or has permitted to be done any of the things hereinbefore in this section mentioned, then said board, body or official may suspend or revoke his license or enter other order thereon." (italics ours)

The petitioners' motion to suppress certain evidence taken from the premises in question was heard and denied by the administrator, and on June 18, 1956, after a hearing

on the merits, he found petitioners guilty of the alleged violation and entered an order suspending the license for a period of two weeks commencing June 25, 1956 and ending July 9, 1956.

The petitioners thereupon appealed such decision and order to the liquor control hearing board. The issues before us arise from the decisions and orders of the board in disposing of such appeal. At the hearing before the board petitioners filed a motion to suppress the evidence which had been taken from the premises by the inspectors, namely, "The Armstrong Daily News Review," "The Morning Telegraph," and a number of white slips of paper with writing on them, on the ground that these articles were seized by the inspectors during the course of an illegal search of the licensed premises. In denying the motion the board found as a fact "that the licensees willingly consented to the search and seizure."

The petitioners contend that the evidence in question was obtained in violation of article I, sec. 6, of the state constitution and was therefore inadmissible in evidence under public laws 1955, chap. 3590, section 1, now G. L. 1956, §9-19-25. We are unable to agree with this contention. It is well established that on certiorari we do not weigh the evidence or pass upon the credibility of witnesses, but will review only errors of law. See *Di Traglia* v. *Daneker,* 83 R. I. 227; *Messier* v. *Daneker,* 81 R. I. 243; *Baginski* v. *Alcoholic Beverage Comm'n,* 62 R. I. 176. It is undisputed that the inspectors were lawfully on the premises by authority granted under the provisions of G. L. 1938, chap. 174, §3, now G. L. 1956, §3-12-3, and chap. 164, §6, as amended, now §3-3-2. After carefully examining the testimony, which was conflicting on the issue in question, we are convinced that the board's finding that the licensees willingly consented to the search and seizure is supported by competent evidence and therefore we will not review it. See *Messier* v. *Daneker, supra,* page 246.

We have found nothing in the evidence to show that petitioners' consent was obtained by force, misrepresentation or trickery. Therefore, in view of the board's finding, we are of the opinion that there has been no violation of petitioners' constitutional rights of freedom from unreasonable search and seizure and that it was not error to admit such evidence. See *State* v. *Lorenzo*, 72 R. I. 175, 182, 185. In view of this conclusion we do not deem it necessary to consider the other contentions of petitioners on this issue.

However, the hearing on the merits was not concluded until January 17, 1957. Before a decision was entered by the board, the petitioners, on January 29, 1957, filed a motion to quash and dismiss the order of suspension entered on June 18, 1956 by the administrator. They contended then, as they do now, that since the license for the year in which the alleged violation had occurred expired on November 30, 1956, even if petitioners are found guilty of the violation as charged, neither the administrator nor the board had any power to suspend the new license issued to petitioners for the year beginning December 1, 1956 and ending November 30, 1957 and that therefore the question is moot.

It appears from the record that on August 19, 1957 the board rendered its decision finding the petitioners guilty of the violation as charged and ordering as a penalty a suspension for a period of fourteen days beginning September 2, 1957. At this time they were operating under a new license of the same class for the same premises for the period beginning December 1, 1956 and expiring November 30, 1957.

General laws 1938, chap. 164, §5, as amended by P. L. 1940, chap. 814, now G. L. 1956, §3-5-21, provides as follows: "Every license shall be subject to revocation or suspension by the board, body or official issuing the same, or by said department of its own motion, for breach by the holder thereof of the conditions on which it was issued or

for violation by the holder thereof of any rule or regulation applicable thereto or for breach of any provisions of this title." The petitioners contend that no authority is conferred by such statute upon the administrator or the board to suspend petitioners' admittedly new license for an offense committed during the term of the expired license. They argue, in effect, that the penalty runs against the license and is an action *in rem* and therefore expires with the license.

It is pertinent to point out that section 5, *supra,* provides in part that *every license* shall be subject to revocation or suspension *for breach of any provisions of this title.* The statute contains no time limit on the imposition of the penalty. It is well established that statutes are to be construed with reference to their intended scope and the purpose of the legislature in enacting them and that where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such sense as will reasonably conform to such scope and purpose. *Blais* v. *Franklin,* 31 R. I. 95, 106. Consistently with that principle of construction we think that each successive license may be deemed to be granted on the condition that for any violation of the liquor law by the holder thereof it shall be subject to the penalty of suspension or revocation therein provided.

After careful consideration it is our opinion that the language of section 5, *supra,* is broad enough to include a grant of power to the administrator or the board to order a suspension of the petitioners' present license, notwithstanding the fact that the former license held by them at the time of the violation had expired. In our view of the language of the act this interpretation is reasonable and necessary to give effect to the legislative intent. See *Nolan* v. *Representative Council,* 73 R. I. 498, 502. In any event, because of the vital public interest in the proper administration and enforcement of the liquor control laws we are of the opinion that the case is not moot. See *Clark* v. *Alcoholic Beverage*

*Comm'n,* 54 R. I. 126. For these reasons the board did not err in denying the petitioners' motion to quash and dismiss.

The petition for certiorari is denied, the stay of the order of suspension is dissolved, the writ heretofore issued is quashed, and the records and papers certified pursuant thereto are ordered sent back to the respondent board.

*J. Frederick Murphy,* for petitioners.

*William E. Powers,* Attorney General, *Edward F. J. Dwyer,* Assistant Attorney General, *Benjamin Winicour,* for respondents.